# UNITED STATES DISTRICT COURT
## THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| APPRIO, INC., | Case No. 1:18-cv-2180-JDB |
| *Plaintiff*, | |
| v. | **Oral Argument Requested** |
| NEIL ZACCARI, | |
| *Defendant*. | |

## NEIL ZACCARI'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO APPRIO, INC'S MOTION FOR SUMMARY JUDGMENT ON CONTRACTUAL ASSIGNMENT OF RIGHTS

 /s/ Kirk T. Schroder
Kirk T. Schroder (VSB No. 27469)
kschroder@schroderbrooks.com
SCHRODER BROOKS PLC
2310 West Main Street, Suite 108
Richmond, Virginia 23220
(804) 510-0700 (T)
(804) 510-0707 (F)

*Counsel for Defendant Neil Zaccari*

HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue NW,
Washington, DC 20037
(202) 955-1500
(202) 778-2201

*Of Counsel for Defendant Neil Zaccari*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... ii

I.      INTRODUCTION ....................................................................................... 1

II.     BACKGROUND ......................................................................................... 2

III.    LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT ........................... 5

IV.     ARGUMENT .............................................................................................. 6

      A.     Plaintiff Has Failed To Demonstrate That Mr. Zaccari Intended To Be Bound By the Agreement ............................................................................. 6

      B.     Plaintiff Has Failed To Present Undisputed Evidence Indicating That Mr. Zaccari Assigned the CRR Software to Plaintiff ................................... 10

            1.     The Agreement Only Requires the Assignment of Company Inventions ................................................................................... 11

            2.     Mr. Zaccari Was Not Required To Disclose the Base Code Because the Code Is Not a Prior Invention ............................................ 12

            3.     Mr. Zaccari Was Not Required To Assign the Updates to the Base Code Because They Qualify As Unassigned Inventions ..................... 14

            4.     Plaintiff's Reliance on DCMA Contracts to Define Its Scope of Business Is Misplaced .............................................................. 15

V.      CONCLUSION .......................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Adkins Energy, LLC v. Farmland Mut. Ins. Co.*,
  No. 04 C 50482, 2009 WL 1259344 (N.D. Ill. May 6, 2009) ..................................................9

*Am. Prop. Const. Co. v. Sprenger Lang Found.*,
  768 F. Supp. 2d 198 (D.D.C. 2011) ...................................................................................6, 7

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ..............................................................................................................5

*Aziken v. District of Columbia*,
  70 A.3d 213 (D.C. 2013) .....................................................................................................11

*Camara v. Mastro's Rests. LLC*,
  952 F.3d 372 (D.C. Cir. 2020) ..............................................................................................7

*Capital City Mortgage v. Habana Vill. Art & Folklore*,
  747 A.2d 564 (D.C. 2000) ...................................................................................................11

*Debnam v. Crane Co.*,
  976 A.2d 193 (D.C. 2009) ...................................................................................................11

*DLY-Adams Place, LLC v. Waste Mgmt. of Md., Inc.*,
  2 A.3d 163 (D.C. 2010) .......................................................................................................11

*Dodek v. CF 16 Corp.*,
  537 A.2d 1086 (D.C. 1988) .................................................................................................11

*Ekedahl v. COREStaff, Inc.*,
  183 F.3d 855 (D.C.Cir. 1999) ...............................................................................................7

*El Paso Nat. Gas Co. v. United States*,
  750 F.3d 863 (D.C. Cir. 2014) ..............................................................................................9

*Empire Med. Rev. Servs., Inc. v. CompuClaim, Inc.*,
  326 F. Supp. 3d 685 (E.D. Wis. 2018)................................................................................15

*In re Enterprise Rent-A-Car Wage & Hour Emp. Practices Litig.*,
  735 F. Supp. 2d 277 (W.D. Pa. 2010)...................................................................................9

*Georgetown Entm't Corp. v. D.C.*,
  496 A.2d 587 (D.C. 1985) .....................................................................................................6

*Hardy v. Johns-Manville Sales Corp.*,
    851 F.2d 742 (5th Cir. 1988) ...................................................................9

*Hartford Fin. Servs. Grp. v. Hand*,
    30 A.3d 180 (D.C. 2011) ........................................................................11

*Hernandez v. Banks*,
    65 A.3d 59 (D.C. 2013) .......................................................................7, 8

*Kahn v. Parsons Global Servs, Ltd.*,
    428 F.3d 1079 (D.C. Cir. 2005) ..............................................................6

*In re Korean Air Lines Disaster of Sept. 1, 1983*,
    597 F. Supp. 613 (D.D.C. 1984) ............................................................5

*In re NM Holdings Co.*,
    407 B.R. 232 (Bankr. E.D. Mich. 2009) ................................................9

*Pro. Portable X-Ray, Inc. v. Nelson*,
    301 F. Supp. 3d 943 (D. Minn. 2018) ....................................................6

*Roberts v. Browning*,
    610 F.2d 528 (8th Cir. 1979) ..................................................................5

*Sanders v. Molla*,
    985 A.2d 439 (D.C. 2009) ....................................................................11

*Specht v. Netscape Commc'ns Corp.*,
    306 F.3d 17 (2d Cir. 2002) .....................................................................8

*Staggers v. Real Authentic Sound*,
    77 F. Supp. 2d 57 (D.D.C. 1999) ...........................................................6

*Venegas-Hernandez v. ACEMLA*,
    424 F.3d 50 (1st Cir. 2006) .....................................................................6

*Washington Properties, Inc. v. Chin, Inc.*,
    760 (A.2d 546, 549 (D.C. 2000) ...........................................................11

**Statutes**

17 U.S.C. § 204(a) ......................................................................................6

**Other Authorities**

48 CFR § 9.505-1 ...................................................................................3, 16

Fed. R. Civ. P. 56(d) ..................................................................................5

Defendant Neil Zaccari, through undersigned counsel, hereby opposes Plaintiff Apprio, Inc.'s ("Plaintiff" or "Apprio") Motion for Summary Judgment on Contractual Assignment of Rights (the "Motion").

## I.    <u>INTRODUCTION</u>

Mr. Zaccari *never* agreed to the terms of the Proprietary Information and Assignment of Inventions Agreement ("Agreement") which was presented to him almost eight months *after* he started his employment with Plaintiff. He has diligently raised this issue numerous times throughout this litigation, and is actively seeking discovery to show that Plaintiff does not have any evidence indicating that he ever did anything more than acknowledge receipt of the Agreement. There is no question that Plaintiff has been aware of the factual disputes surrounding Mr. Zaccari's lack of assent to the Agreement, and in addition to Plaintiff's failure to present undisputed evidence that Mr. Zaccari agreed to be bound by the terms of the Agreement, *Plaintiff has never presented an executed assignment of Mr. Zaccari's copyrighted software that would satisfy the statute of frauds contained in the Copyright Act*—two threshold issues in this case.

Yet, before the parties took any depositions or completed fact discovery, Plaintiff prematurely filed this Motion. Plaintiff's evidence, however, is lacking—and to the extent the Motion cites any evidence, such evidence is contradicted by the record and by Mr. Zaccari's present Opposition. Indeed, the *only* evidence in the Motion purportedly reflecting Mr. Zaccari's assent to the Agreement is a status report and a declaration by Plaintiff's president—someone who does not know Mr. Zaccari, has never spoken or worked with Mr. Zaccari, and was not involved in Mr. Zaccari's work with Plaintiff. (*See* ECF 31-2 at ¶ 22; *Mot.* Ex. A at ¶ 20-21; *Mot.* Ex. K.) Obviously, Plaintiff's president can only allege that, at best, Mr. Zaccari, who was not hired by Plaintiff as a software engineer, may have been sent the Agreement eight months into his employment. However, copyright law is clear that an assignment of a copyright requires a clear

and deliberate executed agreement of assignment.  Mr. Zaccari's declaration makes clear that he never had any intention to be bound by the Agreement or to assign over to Plaintiff the copyright in his software that he had created *years* prior to his employment by Plaintiff. (Zaccari Decl. ¶¶ 14–16.) Accordingly, Plaintiff's Motion must be denied in its entirety because no binding agreement was *ever* formed between the parties concerning the assignment of Mr. Zaccari's copyrighted software.

Moreover, Plaintiff's premature Motion ignores the fact that there are two components to Mr. Zaccari's CRR Software: a base code, and slight updates to the base code. (Zaccari Decl. ¶¶ 8, 11; Schroder Decl. Ex. A § V.D, V.E.) The base code was developed in 2008—more than 7 years before Mr. Zaccari started his employment with Plaintiff. (*Id.*) Thus, if Mr. Zaccari is bound by the Agreement, he is the rightful owner of the base code, because the Agreement does not require assignment of inventions conceived before Mr. Zaccari's employment. (*Mot.* Ex. J, Section 2.2.) Mr. Zaccari is also the rightful owner of the updates he made during his employment with Plaintiff, because the updates do not relate to Plaintiff's "actual or anticipated business," as required under the Agreement. (*Mot.* Ex. J, Sections 2.3, 2.4.) The Motion fails to point to any *undisputed* evidence contradicting these facts, and therefore, Plaintiff's Motion regarding the assignment of the CRR Software must be denied.

## II.   <u>BACKGROUND</u>

In 2008, long before Neil Zaccari had ever worked for Plaintiff, he wrote a software program (the "base code") for searching a given document for user-defined regulatory compliance terms.  (Zaccari Decl. ¶ 4–5.) The base code highlighted those terms in the document and generated a report identifying the page number, line number, and associated regulatory compliance provision. (Zaccari Decl. ¶ 4; Schroder Decl. Ex. A § V.A.) It is undisputed that Mr. Zaccari's base code was

created long before the parties worked together and was created for reasons entirely unrelated to the issues in this action.

Mr. Zaccari is a business consultant whose work is based on Six Sigma, a business methodology for creating portfolios of improvement projects for businesses.  (Zaccari Decl. ¶ 2.) On November 2, 2015, he began working for Plaintiff, a government contractor, as a business consultant.  (Zaccari Decl. ¶ 1–2.)  Although hired as a senior technical manager, there is factual disagreement on what his actual role was.  (*Compare* Compl. ¶ 16 (role is Senior Technical Manager) *with* Schroder Decl. Ex. E (role is "Reengineer/Master Black Belt").) Mr. Zaccari does not have a degree in software development, and his job responsibilities did not require software development. (Zaccari Decl. ¶ 7; *Am. Ans.* Ex. 1 p. 3; Schroder Decl. Exs. C, D, E.)

All of Mr. Zaccari's work was focused on one government contract—a contract task order that Plaintiff had with the Defense Contract Management Agency ("DCMA").  (*Mot.* Ex. D; Zaccari Decl. ¶ 6.)  The full title of the contract was S5121A-15-A-0001, Task Order 0001 ("Task Order One").  (*Mot.* Ex. D at 2.)  Task Order One required Plaintiff to provide the DCMA with business consulting services and strategic support to identify problems and propose solutions with the DCMA's contract review process.  (*Mot.* Ex. D at 11.)

In May of 2016, Mr. Zaccari, using his personal computer at his home, made updates to his base code and renamed it the "CRR Software."  (Zaccari Decl. ¶ 9–10.)  Upon returning to work, Mr. Zaccari demonstrated the CRR Software to his colleagues because he thought the Government might be interested in acquiring that software, but he never used or needed to use the software in connection with his job responsibilities, and never gave anyone the impression that he was showing the software because it fell within his responsibilities as a business consultant.  (Zaccari Decl. ¶ 12–13.)  He was not hired to create software, nor was he permitted to do so under 48 CFR § 9.505-

1(a). (*Am. Ans.* Ex. 1; Schroder Decl. Exs., C, D, E.; Zaccari Decl. ¶ 7.) However, his code was exactly the type of software that the DCMA could use, and Plaintiff forcedly obtained a copy of the CRR Software from Mr. Zaccari by threatening to fire him. (Zaccari Decl. ¶ 13.) Without any permission from Mr. Zaccari, Plaintiff rebranded the software as "ConCISE" and provided it to the DCMA. *Id.*

In June 2016, nearly eight months after his employment with Plaintiff and a month after he first showed his software to anyone at Plaintiff, Mr. Zaccari was for the first time presented with the Agreement through ADP, a software platform that Plaintiff used for human resources services. (Zaccari Decl. ¶ 14–15; *Mot.* Ex. K.) The Agreement was presented as a "Policy" of Plaintiff, and the only action that Mr. Zaccari could take in response to receiving the document was to click an "acknowledge" button to show he had received the document.  (Zaccari Decl. ¶ 16; *Mot.* Ex. K.) No further action or confirmation was offered, required, requested or even possible. (Zaccari Decl. ¶ 16; *Mot.* Ex. K.) There is no evidence in the record that Mr. Zaccari *ever* signed or assented to be bound by the Agreement, nor would he.  (Zaccari Decl. ¶ 16; *Mot.* Ex. K.) Moreover, the ADP platform did not include any statement advising Mr. Zaccari that by pressing the "acknowledge" button, he would somehow be bound by the Agreement or that his continued employment was contingent upon assenting to be bound by the Agreement.  (Zaccari Decl. ¶ 16; Jenkins Decl. ¶ 3–6.)

The Agreement requires the disclosure of "inventions" that the employee may use during his employment, and the assignment of inventions conceived while the employee is working for Plaintiff. (*Mot.* Ex. J, Sections 2.2, 2.3.) Nevertheless, inventions that are developed by the employee during his personal time and using his equipment are excluded from the assignment requirement provided these inventions are unrelated to Plaintiff's "actual or anticipated business"

(nonspecific as that is) and do not result from work performed by him for Plaintiff. (*Mot.* Ex. J, Sections 2.2-2.4.) The Agreement does not require assignment or disclosure of any other inventions.

After Mr. Zaccari and Plaintiff separated on May 15, 2017, he filed a copyright application for his CRR Software, which was registered by the U.S. Copyright Office as Reg. No. TXu 2-082-202. (*Mot.* Exs. H, L, N.) Plaintiff asserts that Mr. Zaccari falsely obtained this copyright registration in his own name, and now moves for summary judgment based on the claim that Mr. Zaccari assigned his ownership rights in the CRR Software to Plaintiff pursuant to the Agreement. (*Mot.* at 2–3.) Plaintiff's Motion, however, should be denied for these reasons: First, Plaintiff is not the author of the CRR Software (which is undisputed); second, no enforceable contract was formed between the parties concerning the transfer of Mr. Zaccari's copyright ownership; and third, even if an enforceable contract was somehow formed between the parties, the CRR Software falls outside of the scope of the obligation to assign under the Agreement. Hence, Mr. Zaccari remains the owner of the CRR Software.

## III.    LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT

Summary judgment is a "severe" remedy that should not be hastily used. *In re Korean Air Lines Disaster of Sept. 1, 1983*, 597 F. Supp. 613, 618 (D.D.C. 1984). And "even if a district judge feels that summary judgment in a given case is technically proper, sound judicial policy and the proper exercise of judicial discretion may prompt him to deny the motion and permit the case to be developed fully at trial." *Id.* (quoting *Roberts v. Browning*, 610 F.2d 528, 536 (8th Cir. 1979)). Where a summary judgment opponent demonstrates, under Federal Rule of Civil Procedure 56(d), that the record is lacking as to an issue that could bear upon summary judgment, the Court can and should delay judgment until that record is complete, without considering "the likelihood that discovery will prevent the entry of summary judgment . . . ." *Id.*; *see also Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 255 (1986) (holding that, in ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor, and accept the nonmoving party's evidence as true); *Kahn v. Parsons Global Servs, Ltd.*, 428 F.3d 1079, 1087 (D.C. Cir. 2005) (explaining that "a party opposing summary judgment needs a 'reasonable opportunity' to complete discovery before responding to a summary judgment motion and that 'insufficient time or opportunity to engage in discovery' is cause to defer decision on the motion").

## IV.   ARGUMENT

### A.   Plaintiff Has Failed To Demonstrate That Mr. Zaccari Intended To Be Bound By the Agreement

Mr. Zaccari is not bound by the Agreement which was presented to him almost *eight* months into his employment, because at no point during his employment did Mr. Zaccari intend to be bound by this Agreement, nor is there any evidence to suggest he agreed to be so bound. Indeed, he *never* manifested his assent to be so bound and Plaintiff's entire case seems to be based on its belief (without any supporting evidence) that Mr. Zaccari clicked "acknowledge" to acknowledge his intent to be bound by the Agreement, as opposed to simply acknowledging that he had been provided with a copy of it. Given that Plaintiff has failed to present any undisputed evidence concerning this material gating fact, Plaintiff's Motion must be denied.[1]

For an enforceable contract to exist under District of Columbia law, "there must be both (1) agreement as to all material terms; and (2) intention of the parties to be bound." *Georgetown*

---

[1]     The Statute of Frauds in the Copyright Act is expressly designed and weighted to be pro-author, *i.e.*, to protect authors from giving up their ownership rights without knowingly and intentionally manifesting their intent to do so. As such, a copyright assignment must be signed in writing and requires some level of clarity. *See* 17 U.S.C. § 204(a). Plaintiff has failed to produce a signed Agreement, and thus, any doubt as to the nature of a copyright assignment is construed in favor of the original copyright holder. *See, e.g.*, *Venegas-Hernandez v. ACEMLA*, 424 F.3d 50, 60 (1st Cir. 2006) (affirming trial court's ruling that there was no transfer based, in part, on lack of a signed writing); *Pro. Portable X-Ray, Inc. v. Nelson*, 301 F. Supp. 3d 943, 949 (D. Minn. 2018) (dismissing claim by party seeking declaratory judgment that it owned a copyright against the copyright holder for lack of a "clear and unequivocal" signed writing); *Staggers v. Real Authentic Sound*, 77 F. Supp. 2d 57, 68–69 (D.D.C. 1999) (granting summary judgment on the issue of copyright ownership against the alleged transferee where the transferee did not have a signed writing but did have the copyright certificate).

*Entm't Corp. v. D.C.*, 496 A.2d 587, 590 (D.C. 1985); *Am. Prop. Const. Co. v. Sprenger Lang Found.*, 768 F. Supp. 2d 198, 202 (D.D.C. 2011) (citing *Ekedahl v. COREStaff, Inc.*, 183 F.3d 855, 858 (D.C.Cir. 1999)).   The parties must objectively manifest their assent to the material terms of the agreement. *Hernandez v. Banks*, 65 A.3d 59, 70 (D.C. 2013).   The parties may manifest their acceptance of a contract through their conduct. *Camara v. Mastro's Rests. LLC*, 952 F.3d 372, 375 (D.C. Cir. 2020).   For this to occur, however, the party must "intend[] to engage in the conduct and know[] or ha[ve] reason to know that the other party may infer from his conduct that he assents." *Id.* (quoting Restatement (Second) of Contracts § 19(2) (1981)).   Moreover, "the party asserting the existence of an enforceable contract bears the burden of proving that there has been a 'meeting of the minds,' or mutual assent, as to all material terms."   *Am. Prop. Const. Co.*, 768 F. Supp. 2d at 202 (*citing Ekedahl*, 183 F.3d at 858).   As the party seeking to enforce the Agreement, the burden is on Plaintiff to show that Mr. Zaccari assented to it.

Nearly eight months after commencement of his employment with Plaintiff, Mr. Zaccari was presented with the Agreement for the first time. (Zaccari Decl. ¶ 14–15.) Mr. Zaccari saw the Agreement on the screen of his work computer at his desk. (Zaccari Decl. ¶ 15.) The Agreement was displayed in the user interface for the ADP platform (Plaintiff's human resources software). (*Id.*) The platform displayed a copy of the Agreement and included an "acknowledge" button—no other statement, direction or button was displayed to Mr. Zaccari. (Zaccari Decl. ¶ 16; Jenkins Decl. ¶ 6.) By pressing the "acknowledge" button, Mr. Zaccari acknowledged that he was given access to the Agreement. (Zaccari Decl. ¶ 16.) Mr. Zaccari was never asked to sign the Agreement, and it was never conveyed to Mr. Zaccari that this Agreement was a condition of continuing his employment. (Zaccari Decl. ¶ 16.) It clearly was not a condition of his initial employment as it was not even made available to him until long after he started working for Plaintiff; Mr. Zaccari

never understood himself to be bound by the Agreement nor did he intend to be bound by the Agreement as a condition of his employment, when he pressed the "acknowledge" receipt button. (*Id.*) Also, Mr. Zaccari was never given an opportunity to have the Agreement reviewed by an attorney.  (*Id.*) Therefore, the Agreement does not constitute a binding contract between Mr. Zaccari and Plaintiff. *See Hernandez*, 65 A.3d at 70; *see also Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29–30 (2d Cir. 2002) ("A consumer's clicking on a download button does not communicate assent to contractual terms if the offer did not make clear to the consumer that clicking on the download button would signify assent to those terms.").

Despite lack of any direct evidence, Plaintiff blindly claims that Mr. Zaccari agreed to be bound by the Agreement. (*Mot.* at 6.) In support of its assertion, Plaintiff relies on the declaration of its president, Mr. Darryl Britt, which in turn relies on a status report printed from Plaintiff's ADP human resource software. (*See* ECF 31-2 at ¶ 22; *Mot.* Ex. A at ¶ 20-21; *Mot.* Ex. K.) This evidence, however, fails to support Plaintiff's argument. The status report, at best, shows that Mr. Zaccari "acknowledged" a "policy" called the "PIIA." (*Mot.* Ex. K.) As discussed above, the ADP user interface did not indicate that by pressing the "acknowledge" button, Mr. Zaccari agreed to be bound by the Agreement. (Zaccari Decl. ¶ 16; Jenkins Decl. ¶ 6.)  Indeed, Mr. Britt's declaration highlights the shortcoming of this supposed evidence—while it claims that Mr. Zaccari *read*[2] the Agreement, the status report does nothing more than recite the date and time that the employee acknowledged receiving the agreement. Although Mr. Britt implies that the status report reflects Mr. Zaccari's acknowledgement of and agreement to be bound by the Agreement, his declaration is in direct contradiction with Mr. Zaccari's declaration. Accordingly, an issue of material fact

---

[2]      "The employees, including Zaccari, navigate through menus, retrieve a copy of the documents, and then indicate via the computer system that they have *read* the documents. When they do so, the computer system indicates the date of the acknowledgement." (*Mot.* Ex. A at ¶ 21.) The statement in Mr. Britt's declaration is not corroborated by the Exhibit K to which it references and upon which it relies. (*Id.*)

exists as to whether pressing the "acknowledge" button indicated that Mr. Zaccari intended to be bound by the Agreement. Moreover, Mr. Britt does not testify that (i) he has any personal knowledge as to the facts related to Mr. Zaccari's employment or any agreements between Mr. Zaccari and Plaintiff, (ii) as president, he oversees human resources which would have supposedly provided the Agreement to Mr. Zaccari, or (iii) this is the manner in which Plaintiff enters into binding agreements with anyone, let alone its employees. (*See Mot.* Ex. A.)

Additionally, Plaintiff attempts to use Mr. Zaccari's pleadings in a prior lawsuit as evidence that he intended to be bound by the Agreement. (*Mot.* Ex. I, ¶ 8.) As a threshold matter, statements in a pleading are binding judicial admissions only for that specific proceeding. *See In re NM Holdings Co.*, 407 B.R. 232, 286 (Bankr. E.D. Mich. 2009) (statements in pleadings in one case are not binding judicial admissions in another case); *Adkins Energy, LLC v. Farmland Mut. Ins. Co.*, No. 04 C 50482, 2009 WL 1259344, at *7 (N.D. Ill. May 6, 2009); *see also El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 876 (D.C. Cir. 2014)).[3] Therefore, these pleadings are not judicial admissions for the purpose of this lawsuit. Moreover, Mr. Zaccari's pleadings in the prior lawsuit were informed by the mistaken belief induced by Plaintiff that he had agreed to be bound by the Agreement through the use of Plaintiff's ADP human resources portal, when in fact he subsequently learned through discovery that he had not. On September 14, 2018, Mr. Zaccari requested a document from Plaintiff.  (Zaccari Decl. ¶ 17.)  In response, Plaintiff's Chief Human Capital Officer, Jennifer Peacock, inaccurately stated that "All of our policies/guidelines are acknowledged in ADP electronically so I cannot provide a signed document per se, but you did *agree* and acknowledge the attached PIIA." (Schroder Decl. Ex. B) (emphasis added.) Although

---

[3]     Judicial admissions are different from evidentiary admissions, which may be rebutted; statements in pleadings in other cases may be the latter, but not the former. *See Hardy v. Johns-Manville Sales Corp.*, 851 F.2d 742, 745 (5th Cir. 1988); *In re Enterprise Rent-A-Car Wage & Hour Emp. Practices Litig.*, 735 F. Supp. 2d 277, 330 n. 18 (W.D. Pa. 2010).

Ms. Peacock's assertion caused Mr. Zaccari to believe that he had assented to be bound by the Agreement despite his recollection to the contrary, discovery later revealed that Ms. Peacock's representation was false. There was, in fact, no evidence to support her claim that during the process of acknowledging receipt of the Agreement, Mr. Zaccari ever agreed to be bound by the Agreement. Mr. Zaccari diligently informed Plaintiff about his mistaken belief, and thus, his prior mistaken belief is not binding in this lawsuit. *See Def.'s Objs. and Resps. To Pl's First Reqs. for Admis* No. 4).

In sum, Plaintiff has failed to present any uncontroverted evidence that Mr. Zaccari assented to the Agreement.  Plaintiff has the burden of showing the existence of a binding agreement, but it has failed to do so.  Accordingly, the Motion must be denied because there is no undisputed evidence of an enforceable contract between the parties.

**B.     Plaintiff Has Failed To Present Undisputed Evidence Indicating That Mr. Zaccari Assigned the CRR Software to Plaintiff**

Even assuming arguendo that Mr. Zaccari had agreed to be bound by the Agreement, he nevertheless did not assign—and was not under any obligation to assign—the CRR Software to Plaintiff. Mr. Zaccari created the base code *almost a decade before* his employment with Plaintiff, and thus, it fell outside of the assignment requirement of Section 2.3 of the Agreement, which required the assignment of "inventions" developed during his employment with Plaintiff. Moreover, Mr. Zaccari's updates to the code during his employment pertain to generic software matters *unrelated* to Plaintiff's business. Given that the updates were made on his own time and personal equipment, these updates qualify as an "Unassigned Invention" under Section 2.4 of the Agreement, which is expressly excluded from the assignment obligation. Because Plaintiff has failed to produce any undisputed evidence concerning Mr. Zaccari's assignment of the CRR

Software, Plaintiff has failed to carry its burden for summary judgment, and thus, Plaintiff's Motion must be denied.[4]

### 1.    The Agreement Only Requires the Assignment of Company Inventions

In the District of Columbia, the "objective law of contracts" is followed, which means that "the written language embodying the terms of an agreement will govern the rights and liabilities of the parties regardless of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite meaning." *Aziken v. District of Columbia*, 70 A.3d 213, 218–19 (D.C. 2013) (*quoting Hartford Fin. Servs. Grp. v. Hand*, 30 A.3d 180, 187 n. 12 (D.C. 2011)).  When there is a disagreement about the terms, "the first step in contract interpretation is determining what a reasonable person in the position of the parties would have thought the disputed language meant." *Washington Props., Inc. v. Chin, Inc.*, 760 (A.2d 546, 549 (D.C. 2000) (*quoting Dodek v. CF 16 Corp.*, 537 A.2d 1086, 1093 (D.C. 1988)). In interpreting contracts, courts "honor the 'plain,' 'ordinary and usual meaning' of the language [of the contract] and turn to extrinsic evidence only when faced with ambiguity." *Sanders v. Molla*, 985 A.2d 439, 441–42 (D.C. 2009) (*quoting Cap. City Mortg. v. Habana Vill. Art & Folklore*, 747 A.2d 564, 567 (D.C. 2000)). And when "determining whether a contract is ambiguous, [courts] examine the document on its face, giving the language used its plain meaning." *Debnam v. Crane Co.*, 976 A.2d 193, 197 (D.C. 2009). Moreover, ambiguities in a contract are construed against the drafter. *DLY-Adams Place, LLC v. Waste Mgmt. of Md., Inc.*, 2 A.3d 163, 167 n. 11 (D.C. 2010).

---

[4]      In apparent agreement with Mr. Zaccari's position, Plaintiff does not argue in its Motion that the CRR Software is a work for hire.

Depending on when an Invention[5] is created, the Agreement appears to recognize two types of Inventions: Prior Inventions and Company Inventions. (*Mot.* Ex. J, sections 2.2, 2.3.) Prior Inventions are Inventions created *prior* to commencement of the employee's employment with Plaintiff that, among other things, the employee may use during his employment. (*Mot.* Ex. J, section 2.2.) The employee may be required to disclose his Prior Inventions at the onset of his employment, but the Agreement does not require disclosure of those Inventions that were created "prior to the commencement of [the employment] if [the employee does] *not* use such inventions in connection with [his employment]." (*Mot.* Ex. J, section 2.2.) (emphasis added).

Company Inventions are Inventions that are created by an employee *during* his employment. (*Mot.* Ex. J, section 2.3.) While the employee is obligated to assign a Company Invention, the Agreement unambiguously excludes Unassigned Inventions from this assignment obligation. (*Mot.* Ex. J, sections 2.3, 2.4.) Unassigned Inventions are Inventions that satisfy the following conditions: 1) they are developed entirely on employee's own time without using Plaintiff's resources; 2) they do not relate to Plaintiff's actual or anticipated business; and 3) they do not result from employee's work for Plaintiff. (*Mot.* Ex. J, section 2.4.) In short, while an employee may be required to assign a Company Invention or to disclose a Prior Invention that the employee intends to use for his employment, the employee is _not_ obligated to assign an Unassigned Invention or an Invention that the employee does not use in connection with his employment.

### 2. Mr. Zaccari Was Not Required To Disclose the Base Code Because the Code Is Not a Prior Invention

Mr. Zaccari's CRR Software includes two components: a base code and an update to the base code. The base code was developed in 2008, long before Mr. Zaccari's employment at

---

[5]     While Mr. Zaccari does not concede that the term "Invention" includes the CRR Software, for the purposes of this Opposition, Mr. Zaccari assumes that CRR Software is an Invention.

Plaintiff. (Schroder Decl. Ex. A § V.E) (metadata validates development of the source code in 2008.) The base code functions as a document keyword search tool, *e.g.*, it opens a document, searches for a keyword, and creates an index of instances where the keyword is found in the document. (Schroder Decl. Ex. A §§ V.A, V.C.) Plaintiff has failed to produce any evidence contradicting these facts. Therefore, the base code is not a Company Invention (and thus, not subject to the assignment requirement of Section 2.3.) because it was developed by Mr. Zaccari prior to his employment with Plaintiff. (*Mot.* Ex. J, sections 2.2, 2.3.)

Moreover, Mr. Zaccari was not obligated to disclose the base code to Plaintiff at the time he was presented with the Agreement[6] because he was not required to use the code in his employment. The Agreement does not require the disclosure of Inventions that were created "prior to the commencement of [the employment] if [the employee does] *not* use such inventions in connection with [his employment]." (*Mot.* Ex. J, section 2.2) (emphasis added.) Mr. Zaccari was not hired as a programmer or software engineer, and his job description never required him to use his base code in connection with his work. (Zaccari Decl. ¶ 7; *Am. Ans.* Ex. 1 p. 3; Schroder Decl. Exs. C, D, E.)[7]

In late 2015, Mr. Zaccari was hired by Plaintiff as a business process redesign consultant for the DCMA's Process Working Group ("PWG"). (Zaccari Decl. ¶ 6.) At that time, PWG was

---

[6]     Mr. Zaccari was first presented with the Agreement in June of 2016, *i.e.*, more than seven months after he started employment with Plaintiff in November 2015. (Zaccari Decl. ¶ 14–15.) Plaintiff has not presented an effective date for the Agreement. As discussed above, Mr. Zaccari is not bound by the Agreement, and thus, the Agreement does not have an effective date. In the event Plaintiff argues that the effective date of the Agreement is when Mr. Zaccari first saw the Agreement, *i.e.*, June 2016, Mr. Zaccari still was not under any obligation to assign the CRR Software. As explained above, the base code was developed in 2008 and the updates were developed in May 2016— a month prior to seeing the Agreement. Therefore, the totality of the CRR Software was developed before the effective date of the Agreement. In this case, the CRR Software is not a Prior Invention because Mr. Zaccari did not use the code in his employment. Thus, he was not under an obligation to disclose the CRR Software. Also, because the CRR Software was developed before his *contracted* employment with Plaintiff, CRR Software would not have been a Company Invention.

[7]     Plaintiff used a similar job description for Mr. Zaccari's co-worker, Mary Sink, a copy of which is attached (*Am. Ans.* Ex. 1 p. 1; Schroder Decl. Ex. E.) Similar to Mr. Zaccari's job responsibilities, writing code and developing software were not within Ms. Sink's job description or the scope of her employment with Plaintiff.

working closely with the Technology Program Management Office ("PMO"), which was developing an Integrated Workflow Management System ("IWMS"). (Zaccari Decl. ¶ 8.) IWMS was designed to provide the infrastructure and supporting databases for the intake, processing and monitoring of a defined sequence of work tasks and activities performed by DMCA's employees. (*Id.*) IWMS was never designed to automatically review contracts for applicable Federal Acquisition Requirements—this was always intended to be a manual task performed by trained employees. (*Id.*) Mr. Zaccari was tasked with sharing private sector process improvement best practices for the PWG teams, and to act as a Lean/Six Sigma coach.  (Zaccari Decl. ¶ 7; Schroder Decl. Ex. E.) There were no provisions in Mr. Zaccari's task order that directed him to write or develop software. (*Mot.* at Ex. D.) Therefore, given that Mr. Zaccari's responsibilities did not require software development at the time he saw the Agreement, he had no obligation to disclose the base code.

### 3. Mr. Zaccari Was Not Required To Assign the Updates to the Base Code Because They Qualify As Unassigned Inventions

In addition to the base code itself, Mr. Zaccari's updates to the base code are not subject to the assignment requirement of Section 2.3 of the Agreement, because the updates fall under the exception provided under Section 2.4 of the Agreement for Unassigned Inventions. Specifically, Section 2.4 of the Agreement excludes the assignment requirement for "inventions" that are: 1) developed entirely on employee's own time without using Plaintiff's resources; 2) do not relate to Plaintiff's actual or anticipated business; and 3) do not result from employee's work for Plaintiff. (*Mot.* Ex. J, section 2.4.)

Here, Mr. Zaccari's updates fall squarely under this exclusion. In 2016, Mr. Zaccari—on his own time and without using any of Plaintiff's resources—added non-substantive updates to the base code. (Zaccari Decl. ¶ 9–11; Schroder Decl. Ex. A § V.D.) These updates are relatively

insignificant, and the intent, form, function, and structure of the source code remained the same. (Zaccar Decl. ¶ 11; Schroder Decl. Ex. A § V.C.) For example, the modifications add features relating to file handling aspects of different versions of Microsoft Office Suite. (Zaccari Decl. ¶ 11; Schroder Decl. Ex. A § V.D.) The base code contains the keyword lookup and the keyword search engine functions. (Zaccari Decl. ¶ 10–11.) These two functions, which are the core value of the software, were not modified in 2016, and without these functions, the software is essentially useless for solving the problem at hand. (*Id.*) As such, these updates are generic software functionality *unrelated* to Plaintiff's "actual or anticipated business." (*Id.*)

Moreover, these updates did not result from any work Mr. Zaccari performed for Plaintiff. (*Id.*) In fact, some of the updates can be freely downloaded from the Internet. (*Id.*) Therefore, Mr. Zaccari's updates are excluded from the assignment obligation, and Plaintiff has failed to produce any contradictory evidence in this regard.[8]

### 4. Plaintiff's Reliance on DCMA Contracts to Define Its Scope of Business Is Misplaced

In support of its Motion, Plaintiff cites two contracts as supposed evidence of Plaintiff's "actual or anticipated business." (*Mot.* Ex. J, sections 2.4.) These contracts are contract no. GS-06F-0925Z, dated September 1, 2014, and contract no. S5121A-15-A-0001, which was awarded in the second half of 2015. (*See* Mot. at 9-10.) These contracts, however, fail to demonstrate Plaintiff's "actual or anticipated business" in relation to Plaintiff's purported Agreement with Mr. Zaccari. Specifically, contract no. GS-06F-0925Z was awarded on September 1, 2014, *i.e.*, 14 months prior to Mr. Zaccari's start of employment at Plaintiff, and all work under this contract

---

[8]     Even if the Court finds that Mr. Zaccari was required to assign the updates to the base code to Plaintiff, there is a dispute of material fact which precludes summary judgment because the Court must still determine the extent of Plaintiff's ownership of the copyright for the CRR Software. *See Empire Med. Rev. Servs., Inc. v. CompuClaim, Inc.*, 326 F. Supp. 3d 685, (E.D. Wis. 2018) (concluding that a purported assignment agreement only assigned certain "add-ons" to the software and not the base software itself).

was completed prior to Mr. Zaccari's start date of November 2, 2015, and Mr. Zaccari played no role in this contract nor in any of its deliverables. (Zaccari Decl. ¶ 6) Accordingly, contract no. GS-06F-0925Z is irrelevant to defining Plaintiff's "actual or anticipated business" for purposes of interpreting Plaintiff's alleged Agreement with Mr. Zaccari.

With respect to contract no. S5121A-15-A-0001, there were two Task Orders. (*Mot.* Exs. D, E.) Task Order 00001 was awarded on August 24, 2015 (*Mot.* Ex. D, p. 2.) and Mr. Zaccari was hired to specifically work on this Task Order Contract. (Zaccari Decl. ¶ 6.) Task Order 00001 tasked Plaintiff to design and develop requirements, *e.g.*, "[s]upport design and testing of new contract lifecycle management business processes with business rationale, and based on full understanding." (*Mot.* Ex. D, p. 11.) Deliverables for this Task Order included documentation graphics, CMO change management plan, catalog of to-be business process flows, and final pilot summary results report. (*Mot.* Ex. D, p. 11.) Software development was not within the scope of this Task Order. (Zaccari Decl. ¶ 6–7; *Mot.* Ex. D p. 11.) Therefore, Plaintiff failed to demonstrate that this agreement shows Mr. Zaccari's update is related to Plaintiff's "actual or anticipated business."

Task Order 00002 was awarded on September 14, 2015. Mr. Zaccari was not hired to work on this Task Order Contract, which tasked Plaintiff to "develop automation tools." (*Mot.* Ex. E, p. 9; Zaccari Decl. ¶ 6.) This Task Order is irrelevant, however, because it was inappropriately awarded to Plaintiff. Specifically, government regulation prohibits a contractor from developing specifications for a project, and ultimately, supply the end product for that project.[9] Accordingly,

---

[9]      *See* 48 CFR § 9.505-1(a) ("A contractor that provides systems engineering . . . for a system but does not have overall contractual responsibility for its development, its integration, assembly, and checkout, or its production shall not - (1) Be awarded a contract to supply the system or any of its major components"); § 9.505-1(b) ("Systems engineering includes . . . determining specifications . . . developing test requirements . . . ."); *see also Report of Preliminary Review of Suspected Anti-Deficiency Act Violations Regarding Integrated Workload Management System (IWMS) Contracts*, Department of Army ("Apprio should have been precluded from any further award of IWMS per

Plaintiff may not rely on the Task Order 00002 to demonstrate its "actual or anticipated business" when it was inappropriately awarded the Task Order.

## V.      **CONCLUSION**

For the reasons discussed above, Mr. Zaccari never intended to enter into a contract with Plaintiff and even if he did, he was not obligated to assign his CRR Software to Plaintiff. Accordingly, this Court should deny Plaintiff's motion for summary judgment.

Dated: <u>March 5, 2021</u>                                    Respectfully Submitted,

                                                 <u> /s/ Kirk T. Schroder        </u>
                                                 Kirk T. Schroder (VSB No. 27469)
                                                 kschroder@schroderbrooks.com
                                                 SCHRODER BROOKS PLC
                                                 2310 West Main Street, Suite 108
                                                 Richmond, Virginia 23220
                                                 (804) 510-0700 (T)
                                                 (804) 510-0707 (F)

                                                 *Counsel for Defendant Neil Zaccari*

                                                 HUNTON ANDREWS KURTH LLP
                                                 2200 Pennsylvania Avenue NW,
                                                 Washington, DC 20037
                                                 (202) 955-1500
                                                 (202) 778-2201

                                                 *Of Counsel for Defendant Neil Zaccari*

---

FAR 9.5. Yet it was awarded 3 additional contracts (see below) in 2013, 2014, 2015 to preform those requirements and implement the very solution it identified DCMA needed to replace EDW and transform its IT architecture.").

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on March 5, 2021, I filed a true and correct copy of the foregoing document via the Court's electronic-filing system, which will send electronic notification of such filing to all counsel-of-record in this action.

 /s/ Kirk T. Schroder          
Kirk T. Schroder (VSB No. 27469)  
kschroder@schroderbrooks.com  
SCHRODER BROOKS PLC
