UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

APPRIO, INC.,

    Plaintiff,

        v.

NEIL ZACCARI,

    Defendant.

Civil Action No. 18-2180 (JDB)

### ORDER

Defendant Neil Zaccari has filed a motion under Federal Rule of Civil Procedure 54(b) asking this Court to reconsider its June 1, 2021 Memorandum Opinion ("Mem. Op.") [ECF No. 45] and Order [ECF No. 44] granting Plaintiff Apprio, Inc.'s ("Apprio") motion for partial summary judgment. Def.'s Mot. for Recons. of Ct.'s Order ("Mot.") [ECF No. 47]. Rule 54(b) provides that an interlocutory order—like the Court's June Order—"may be revised at any time before the entry of a judgment." Fed. R. Civ. P. 54(b). For purposes of this Order, the Court assumes familiarity with the June Opinion and Order and will only reiterate those facts necessary to resolve the instant motion.

Motions brought under Rule 54(b) may be granted, in the court's discretion, "as justice requires." Capitol Sprinkler Inspection, Inc. v. Guest Servs. Inc., 630 F.3d 217, 227 (D.C. Cir. 2011); see also Cobell v. Norton, 355 F. Supp. 2d 531, 539 (D.D.C. 2005) (describing the court's inquiry as "whether reconsideration is necessary under the relevant circumstances"). To make this determination, a court considers whether it "patently misunderstood a party[,] . . . has made an error not of reasoning but of apprehension, or [if] a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court." Singh v. George Wash. Univ.,

1

383 F. Supp. 2d 99, 101 (D.D.C. 2005) (citation omitted).  Rule 54(b) motions may properly be granted, for instance, where the movant presents the court with "new information" justifying reconsideration of a previous decision.  See Doe I v. Exxon Mobil Corp., No. 01-cv-1357, 2019 WL 2348100, at *3 (D.D.C. June 3, 2019).  "At the same time, a court's discretion under Rule 54(b) is 'limited by the law of the case doctrine and subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'"  Jordan v. U.S. Dep't of Just., No. 17-cv-2702, 2019 WL 2028399, at *2 (D.D.C. May 8, 2019) (quoting Singh, 383 F. Supp. 2d at 101).  "[A] Rule 54(b) motion cannot be used 'to reargue facts and theories upon which a court has already ruled' or to 'present[] theories or arguments that could have been advanced earlier.'"  Shvartser v. Lesker, 330 F. Supp. 3d 356, 360 (D.D.C. 2018) (quoting Dunlap v. Presidential Advisory Comm'n on Election Integrity, 319 F. Supp. 3d 70, 81 (D.D.C. 2018)).

Zaccari's motion argues that this Court erroneously relied on "two assumptions" that he characterizes as "unsupported by any facts or evidence of record."  Mot. at 3.  Zaccari charges that the Court found he gave up his proprietary rights in the CRR Software based on an improper assumption that he "used the base code and/or the update in connection with his employment."  Id. at 4.  This argument has no merit, and Zaccari is incorrect in characterizing the court's finding of the lack of a genuine dispute of material fact as an "assumption."  The Court cited considerable evidence to support its conclusion on this point.  Zaccari's briefing on the instant motion twice selectively quotes this Court's statement that "there is no dispute that Zaccari did use the CRR Software, including any prior base code, in connection with his work for Apprio," and claims that the Court provided no facts, evidence, or citations to support this conclusion.  Mot. at 5, 7 (quoting Mem. Op. at 23).  It is true that the quoted sentence lacks a supporting citation, but that is only

because it comes at the end of several paragraphs in which the Court explained its reasoning and cited to the record. Zaccari's briefing omits the all-important start of the sentence: "[f]or the reasons stated above." Mem. Op. at 23.

The undisputed facts and record citations establishing that Zaccari used the CRR Software in connection with his work are found throughout the paragraphs preceding the sentence Zaccari quotes. Among other things, the Court cited Zaccari's admissions that "one of the functions of the CRR Software is to effectively implement contract review" and that another is "to automate contract receipt and review processes." Mem. Op. at 22 (citing Ex. H to Stmt. of Undisputed Material Facts in Supp. of Apprio Inc.'s Mot. ("Pl.'s SUMF"), Def.'s Objs. & Resps. to Pl.'s First Reqs. for Admis. ("Def.'s RFA Resps.") [ECF No. 31-12] Nos. 35, 38; Def.'s Resp. to Pl.'s Stmt. of Undisputed Material Facts ("Resp. SUMF") [ECF No. 34-2] ¶¶ 34–35). The Court also noted that Zaccari admitted that he "would not have provided the CRR Software to DCMA had he not been employed by Apprio." Id. (citing Def.'s RFA Resps. No. 25). Furthermore, Apprio's work for DCMA involved the agency's contract review process. Id. at 23–24. Accordingly, when Zaccari provided the CRR Software to DCMA—acting as an Apprio employee and only because he was an Apprio employee—he "used" the software in connection with his employment.[1] Zaccari is wrong, then, to claim that the only evidence concerning his use of the software comes from his own declaration. See Mot. at 7. The fact that his briefing on this point relies so heavily on citations to his declaration and to the brief filed in connection with the underlying motion for partial summary judgment underscores the fact that this aspect of Zaccari's motion for reconsideration

---

[1] Zaccari also points to language in his declaration in which he explained that he did not intend to use the CRR Software as part of his job or to give it to Apprio, Mot. at 7, but he does not explain why his intent should be carry any legal weight. The Agreement does not say anything about intent. The same goes for his suggestion that he did not "turn over his software as part of his routine job duties." Def.'s Reply in Supp. of His Mot. for Recons. ("Reply") [ECF No. 49] at 5.

largely "rehash[es] arguments previously made and rejected" in a way that is not proper for a Rule 54(b) motion. See Arias v. DynCorp, 856 F. Supp. 2d 46, 51–52 (D.D.C. 2012) (denying reconsideration on this basis).[2]

The other erroneous "assumption" Zaccari contends the Court made in its prior opinion is an assumption that the "Proprietary Information and Assignment of Inventions Agreement" (the "Agreement"), Ex. J to Pl.'s SUMF [ECF No. 31-14], came into effect before he updated his base code and created the CRR Software. According to Zaccari, the Court's Memorandum Opinion suggests that he was bound by the Agreement before he ever saw it. Mot. at 4–5. Zaccari raised this argument in a footnote in his opposition to Apprio's motion for partial summary judgment. Zaccari's Mem. of P. & A. in Opp'n to Apprio, Inc.'s Mot. ("Opp'n") [ECF No. 34] at 13 n.6. The argument was not explicitly addressed in the Court's Memorandum Opinion, though the Court believes its analysis of the Agreement's terms sufficiently demonstrate why it fails. Nonetheless, the Court will address (and reject) the argument now for the sake of clarity.

Like many of Zaccari's arguments in opposition to Apprio's motion for partial summary judgment, this "effective date" argument overlooks the clear and unambiguous language of the Agreement. E.g., Mem. Op. at 10, 11, 18. In Paragraph 2.3 of the Agreement, Zaccari consented to "assign and agree to assign in the future . . . to the Company all my right, title and interest in and to any and all Inventions . . . made or conceived or reduced to practice . . . during the period of My Service." Agreement ¶ 2.3. The Agreement defines "My Service" as "my employment or engagement as an independent contractor by [Apprio]." Id. ¶ 1.1. Nothing in the Agreement

---

[2] One novel and related argument, presented at the end of Zaccari's reply brief, is that Apprio and the Court have failed to explain "how turning over a software to an employer is using the software in connection with an employee's employment." Reply at 5. The Court doubts that there is any genuine confusion on this point, but Zaccari provides one possible answer to his own question two sentences later: "Zaccari only surrendered his software under threat of loss of employment." Id. Further, he provided the software to DCMA, which was Apprio's client, and with whom he was only interacting because he was employed by Apprio.

suggests that Paragraph 2.3's assignment of rights only applies to Inventions created or incorporated <u>after</u> the Agreement is signed. In fact, the opposite is true, as the phrase "<u>assign and</u> agree to assign in the future" in Paragraph 2.3 makes clear. <u>Id.</u> ¶ 2.3 (emphasis added). An employee consenting to the Agreement "assign[s]" all rights he or she currently has, and "agree[s] to assign" all rights he or she might obtain later on. Zaccari's argument reads the phrase "assign and" out of the contract and would make the provision only forward-looking. He cannot maintain his rights in the CRR Software even if he created it before seeing the Agreement because, in the Agreement, he consented to "assign . . . to the Company all [his] right, title and interest in and to any and all Inventions . . . made or conceived . . . during the period of [his] Service." <u>Id.</u>

Zaccari suggests that this interpretation of the Agreement gives it an "effective date" in the past and makes the Agreement apply retroactively. Mot. at 4. This characterization is misleading. The Agreement simply requires that Zaccari turn over rights he possesses at the time he consents to the Agreement. It is no more retroactive than a contract selling a piece of real estate—selling your house does not mean you never owned it. Zaccari created the CRR Software during his service at Apprio and, when he acknowledged the Agreement, he turned over any rights in it that he possessed.[3]

Zaccari's proposed timeline—assuming it is accurate—also fails to salvage his rights via either of the exceptions for Prior Inventions laid out in Paragraph 2.2 of the Agreement. The Court's reasoning in its June Opinion suffices to explain why:

> There is likewise no genuine dispute that the CRR Software is neither a disclosed Prior Invention nor an invention that did not need to be disclosed under Paragraph 2.2. Zaccari has admitted that he did not submit a Previous Inventions Disclosure Form, Def.'s RFA Resps. No. 58, so neither the CRR Software nor the base code can

---

[3] The Court need not decide whether Zaccari or Apprio owned any proprietary rights in the CRR Software at the moment Zaccari turned it over to DCMA, assuming that Zaccari did so before he acknowledged the Agreement. This case does not pose that question.

> be protected as a Prior Invention. Even if he had disclosed the base code as a Prior Invention, he would have lost his proprietary rights when he incorporated it into the CRR Software. Agreement ¶ 2.2. ("If, in the course of [my Apprio employment], I incorporate a Prior Invention into a Company product . . . , the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual worldwide license . . . .").

Mem. Op. at 22–23.

The final page of Zaccari's motion for reconsideration is dedicated to a related argument that the CRR Software might qualify as a Prior Invention, and that the Court only thought otherwise because of an improper assumption about the "effective date" of the Agreement. Mot. at 8. Again, this argument misconstrues the Agreement's "effective date" and is foreclosed by the Agreement's unambiguous language. Prior Inventions are those "made prior to the commencement of [an employee's] Service," not those made prior to the employee's acknowledgment of the Agreement. Agreement ¶ 2.2. Disclosed Prior Inventions must be disclosed, and Zaccari disclosed nothing. Undisclosed Prior Inventions that can nonetheless be excluded from the assignment-of-rights provision are "Inventions that [employees] have developed . . . prior to the commencement of [their] Service if [they] do not use such inventions in connection with [their] Service." Id. (emphasis added). Even if Zaccari were somehow correct that he did not use the CRR software in connection with his work, the software would not qualify as an undisclosed Prior Invention because it was not developed prior to the commencement of his Service. See Zaccari Decl. [ECF No. 34-4] ¶ 9 (describing the creation of the CRR Software in May 2016).[4] In sum, the Agreement is not drafted to be exclusively forward-looking, and it accounts for the exact possibilities that Zaccari says the Court overlooked.

---

[4] As the Court made clear in its June Opinion, Apprio's motion for partial summary judgment did not ask the Court to evaluate the extent of rights Zaccari had in the CRR Software at the time of its creation. Mem. Op. at 20–21 ("To the extent that Zaccari is arguing, for example, that the work he did in 2016 is somehow not copyrightable, that argument would fall outside the scope of this motion, which concerns only the contractual agreement between the parties.").

Accordingly, for the foregoing reasons, [47] Zaccari's motion for reconsideration is **DENIED**.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: August 27, 2021