# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **APPRIO, INC.,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 18-2180 (JDB)** |
| **NEIL ZACCARI,** | |
| **Defendant.** | |

## <u>MEMORANDUM OPINION</u>

Apprio, Inc., ("Apprio") a government contractor, brings this suit against a former employee, Neil Zaccari, seeking damages and a declaration of its rights. The dispute involves rights in a software program that Zaccari developed while working at Apprio. Apprio previously moved for partial summary judgment, asking the Court to declare that Apprio and Zaccari had an enforceable contract under which Zaccari assigned his rights in the software program to Apprio. The Court granted that request in June. <u>See generally</u> Mem. Op., June 1, 2021 [ECF No. 45] ("June 2021 Opinion" or "Mem. Op."); Order, June 1, 2021 [ECF No. 44] ("June 2021 Order"). Apprio now moves for summary judgment on its remaining breach of contract claim. <u>See generally</u> Apprio, Inc.'s Mot. for Summ. J. on Zaccari's Breach of Contract [ECF No. 59] ("Mot."); Mem. in Supp. of Mot. [ECF No. 59-1] ("MSJ Br."). Zaccari opposes summary judgment and requests that the Court reconsider its prior partial summary judgment order. <u>See generally</u> Def.'s Mem. of P. & A. in Opp'n to Mot. [ECF No. 62] ("Opp'n").

Because resolution of Zaccari's request that this Court reconsider its prior grant of partial summary judgment is logically antecedent to Apprio's present motion for summary judgment, the

Court will address that request before turning to Apprio's pending motion. Except to the very limited extent necessary to address Zaccari's purportedly newly discovered evidence, the Court will deny Zaccari's request for reconsideration. Further, because the uncontroverted factual record establishes that there is no genuine dispute that Zaccari did commit three of the four alleged breaches, and that Apprio was damaged by these breaches, the Court will grant Apprio's motion.

## BACKGROUND[1]

On January 22, 2021, Apprio moved for partial summary judgment regarding contractual assignment of rights, which this Court granted on June 1, 2021. See Mem. Op. at 24. In support of that motion, Apprio first argued there was no genuine dispute that Zaccari agreed to be bound by the Proprietary Information and Assignment of Inventions Agreement ("PIIA"[2]), which Zaccari "acknowledged" on or before June 15, 2016 after it was presented to him by Apprio's human resources department. Mem. in Supp. of Apprio Inc.'s Mot. for Summ. J. on Contractual Assignment of Rights [ECF No. 31-1] ("PSJ Br.") at 6–7. Zaccari's acknowledgement was "[i]n consideration of [him] being retained as a consultant with or employee of [Apprio]." Id. at 6. In opposition, Zaccari admitted that Apprio had presented the agreement to him and that he had "press[ed] the 'acknowledge' button," but he argued that he "never understood" nor "intended" himself to be bound by the PIIA, or for his employment to be conditioned on his assent. Neil Zaccari's Mem. of P. & A. in Opp'n to Apprio, Inc[.]'s Mot. for Summ. J. on Contractual Assignment of Rights [ECF No. 34] ("PSJ Opp'n") at 6–10. Accordingly, he argued that Apprio

---

[1] The Court previously described the factual and procedural histories—of both this litigation and "the 1560 litigation," see Compl [ECF No. 1], Zaccari v. Apprio, Inc., No. 18-cv-1560 (D.D.C. June 29, 2018)—in its June 2021 Opinion at 1–5. For the sake of concision, the Court will assume knowledge of that background. The Court will now supplement that section only with additional background relevant to the present motion and to Zaccari's request that the Court reconsider its June 2021 Opinion.

[2] The Court previously referred to the PIIA in shorthand as the "Agreement." See, e.g., Mem. Op. at 2. Since both parties in their briefing for the present motion refer to it as the PIIA, the Court will now do likewise.

had insufficient evidence that he assented.  See id.  In a footnote, Zaccari also argued that because Apprio "failed to produce a signed [PIIA]," under the Copyright Act's statute of frauds "any doubt as to the nature of a copyright assignment is construed in favor of the original copyright holder," i.e., Zaccari.  Id. at 6 n.1.

The Court held that "even looking only at the evidence Zaccari relie[d] on," he "objectively manifested his assent" to the PIIA's terms.  Mem. Op. at 10.  The Court saw no meaningful distinction in this situation between "acknowledging" the PIIA and "signing" or "agreeing to" it. Id. at 11.  Specifically, the Court found the evidence established that "[t]he text of the [PIIA] and the context in which it was presented made it objectively clear that Apprio intended that its employees would manifest their assent to the [PIIA] by the act of clicking 'acknowledge,' and this is what Zaccari did."  Id. at 10.  The Court further noted that the PIIA itself drew an "equivalence" between acknowledging and agreeing.  Id. at 11–12.  And since there was no separate signature line, nor any instructions or directions to print and sign the PIIA, Zaccari had "no reason to think that Apprio expected a more formal acceptance of the" PIIA than the acknowledgement he provided.  Id. at 12.  Accordingly, the Court held that "[b]ecause acknowledging the [PIIA] amounts to signing it in this context, Zaccari is bound by its terms."  Id. at 13.  The Court likewise held that Zaccari's acknowledgement satisfied the E-SIGN Act, 15 U.S.C. § 7001(a), and hence was a valid signature for purposes of satisfying the statute of frauds, Mem. Op. at 13–14.[3]

Apprio next argued that pursuant to the PIIA, Zaccari assigned any of his rights in a piece of software he had developed—the "CRR Software"—to Apprio.  See PSJ Br. at 8–9.  Section 2.3 of the PIIA provides that, subject to two other sections, Zaccari "hereby assign[s] and agree[s] to

---

[3] In the June 2021 Opinion, the Court noted two paragraphs of further, additional evidence of Zaccari's "objective manifestation of intent to be bound contractually," including his silence to Apprio regarding his purported subjective intent not to be bound despite acknowledging the PIIA, and his attempt to enforce the PIIA in the 1560 litigation.  See Mem. Op. at 14–15.

assign in the future . . . to [Apprio] all [his] right, title and interest in and to any and all Inventions (and all Proprietary Rights with respect thereto)" that Zaccari "made or conceived or reduced to practice or learned" during his employment with Apprio.  Id. at 7–8.  Section 2.4 of the PIIA excluded from this assignment inventions "(1) developed entirely on Zaccari's own time without using Apprio's equipment, supplies, facilities, or trade secrets, and (2) neither related to [] Apprio's actual or anticipated business, research or development, nor resulting from Zaccari's work performed for Apprio."  Id. at 8.  Apprio argued that Section 2.4 did not apply, however, since the CRR Software was created pursuant to a pair of Apprio's contracts with the Defense Contract Management Agency ("DCMA"), under which Apprio "did create, install, and test prototype software for the automation of DCMA's contract receipt and review processes"; because the CRR Software related to Apprio's actual work, it fell outside the exception and was assigned to Apprio under the PIAA.  Id. at 10–12.  In opposition, Zaccari argued that he created the "base code" for the CRR Software before his employment, so the Software was an "Unassigned Invention," and not a "Prior Invention" that would need to be disclosed, nor a "Company Invention."  PSJ Opp'n at 12–13.  Moreover, the "non-substantive updates" Zaccari made to this base code during his employment "1) [were] developed entirely on [Zaccari's] own time without using [Apprio's] resources; 2) [did] not relate to [Apprio's] actual or anticipated business; and 3) [did] not result from [Zaccari's] work for [Apprio]," so they were also Unassigned Inventions.  Id. at 14–15.

The Court determined that, under the clear and unambiguous language of the PIIA, Zaccari had assigned his rights in the CRR Software to Apprio through the PIIA.  See Mem. Op. at 18, 24. The PIIA required that if Zaccari developed the CRR Software "in connection with" his employment, it would become a Company Product unless its status as a Prior Invention was properly disclosed.  Id. at 19–20.  Moreover, it was immaterial whether the updates to the base

4

code were "non-substantive," as the PIIA did not distinguish non-substantive updates from the assignment-of-rights provisions. Id. at 20. Accordingly, the Court concluded that there was no genuine dispute that Zaccari assigned his proprietary rights in the CRR Software to Apprio, and granted Apprio partial summary judgment. Id. at 21.

Zaccari filed a Rule 54(b) motion to reconsider on July 9, 2021, see Def. Neil Zaccari's Mot. for Recons. of Ct.'s Order Granting Partial Summ. J. on Contractual Assignment of Rights [ECF No. 47] at 1, but the Court denied it, Order, Aug. 27, 2021 [ECF No. 50] ("Aug. 27 Order") at 7. Shortly thereafter, Zaccari filed a second Rule 54(b) motion, this time requesting that the Court certify its June 2021 Order as a final judgment and stay proceedings pending appeal. Def.'s Mot. for an Order Directing Entry of Final J. and Staying Further Proceedings [ECF No. 53] at 1. The Court denied that motion on December 7, 2021. Mem. Op. & Order, Dec. 7, 2021 [ECF No. 57] at 10.

Discovery closed on December 10, 2021. See Min. Order, Oct. 27, 2021. On January 24, 2022, Apprio timely filed a motion for summary judgment concerning Zaccari's breach of contract. MSJ Br. at 2. Zaccari filed his Opposition on February 18, 2022, in which he again requested that the Court reconsider its June 2021 Order. See Opp'n at 1. On March 11, 2022, Apprio filed its Reply to Zaccari's Opposition. See generally Reply Mem. in Supp. of Apprio Inc.'s Mot. [ECF No. 63] ("Reply"). Apprio's motion is fully briefed and ripe for decision.

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a 'material' fact." Etokie v. Duncan, 202 F. Supp.

3d 139, 145 (D.D.C. 2016) (citation omitted).  Hence, "[o]nly disputes over facts that might affect

the outcome of the suit under the governing law will properly preclude the entry of summary

judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment may not "be avoided based on just any disagreement as to the relevant

facts; the dispute must be 'genuine,' meaning that there must be sufficient admissible evidence for

a reasonable trier of fact to find for the non-movant."  Etokie, 202 F. Supp. 3d at 146 (quoting

Anderson, 477 U.S. at 248); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

574, 586 (1986) (non-moving party must "do more than simply show that there is some

metaphysical doubt as to the material facts").  "A party asserting that a fact cannot be or is

genuinely disputed must support that assertion by" either "citing to particular parts of materials in

the record, including depositions, documents, electronically stored information, affidavits, . . . or

other materials," or "showing that the materials cited do not establish the absence or presence of a

genuine dispute."  Fed. R. Civ. P. 56(c)(1).  "[A]ny factual assertions in the movant's affidavits

will be accepted . . . as being true unless [the opposing party] submits his own affidavits or other

documentary evidence contradicting the assertion."  Nguyen v. Vu, No. 19-cv-894 (DLF), 2021

WL 2809435, at *2 (D.D.C. July 6, 2021) (second and third alterations in original) (quoting Neal

v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992)); see also L. Civ. R. 7(h)(1).

At summary judgment, a court may not "make credibility determinations or weigh the

evidence," Lopez v. Council on Am.-Islamic Rels. Action Network, Inc., 826 F.3d 492, 496 (D.C.

Cir. 2016) (citation omitted), but instead must resolve legal questions while viewing the evidence

in the light most favorable to the non-moving party, see, e.g., Robinson v. Pezzat, 818 F.3d 1, 8

(D.C. Cir. 2016) (citing Anderson, 477 U.S. at 255).  Assertions that are "mere allegations" or

"conclusory statements," however, may not be relied upon to establish a genuine factual dispute.

Bowyer v. Dist. of Columbia, 910 F. Supp. 2d 173, 189 (D.D.C. 2012) (internal quotation omitted);

see also United States v. Dynamic Visions Inc, 971 F.3d 330, 337 (D.C. Cir. 2020) (disregarding

various averments that were "too conclusory to create a genuine issue").

## ANALYSIS

### I.    RECONSIDERATION OF PARTIAL SUMMARY JUDGMENT ORDER

In opposing Apprio's current motion for summary judgment, Zaccari requests that the

Court reconsider the June 2021 Opinion granting partial summary judgment to Apprio.  Opp'n at

1.  According to Zaccari, the summary judgment decision was interlocutory, so the Court may

revise it "as justice requires."  Id. at 8.  Zaccari argues that subsequent to that opinion, two

depositions—one each of Zaccari himself and of Darryl Britt, Apprio's president—"revealed"

disputed issues of fact that "require reconsideration" of both holdings referenced above.  Id. at 3.

Specifically, Zaccari argues that there is now a dispute regarding whether Zaccari "assented to the

material terms of the PIIA," as well as whether "the CRR Software was assigned to Apprio."  Id.

Furthermore, Zaccari also renews his argument regarding the statute of frauds.  Id.

Although Zaccari does not directly state that he is requesting that the Court reconsider

under Rule 54(b), nor has he filed any motion in relation to his opposition, the Court reads

Zaccari's brief as so moving.  So too does Apprio in its Reply.  See Reply at 1–2.  To be thorough,

the Court will address Zaccari's arguments as though raised in a Rule 54(b) motion for

reconsideration.

### A.  Effect of Court's Prior Decision

Zaccari argues that the Court's "ruling on partial summary judgment was anything but

final."  Opp'n at 8.  As a result, according to Zaccari, the law of the case doctrine cannot apply, so

Apprio is unable to rely on this Court's grant of partial summary judgment in order to meet its

burden on the present motion for summary judgment.  See id.  In other words, Zaccari contends that Apprio must re-prove the existence of a valid contract between them.  See id.  Apprio responds that the law of the case doctrine applies, and Zaccari failed to establish "extraordinary circumstances" that would merit an exception to it.  Reply at 3 (citation omitted).

Zaccari is correct that the law of the case doctrine technically does not apply to interlocutory orders in this Circuit.  See, e.g., Keepseagle v. Perdue, 856 F.3d 1039, 1048 (D.C. Cir. 2017).[4]  Because the Court is empowered to reconsider its interlocutory decisions under Rule 54(b), it may not treat those decisions as the law of the case.  See Filebark v. U.S. Dep't of Transp., 555 F.3d 1009, 1013 (D.C. Cir. 2009).  But as Wright and Miller note, the law of the case doctrine is but one label for a set of policies "that support adherence to earlier rulings without perpetual reexamination."  18B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction & Related Matters § 4478.1 (3d ed., 2021 supp.); see also Messinger v. Anderson, 225 U.S. 436, 444 (1912) ("[T]he phrase[] 'law of the case[]' . . . merely expresses the practice of courts generally to refuse to reopen what has been decided. . . .").  Such policies are equally relevant to whether a court should, or even may, reconsider a decision under Rule 54(b).  See Labow v. U.S. Dep't of Just., 278 F. Supp. 3d 431, 437 (D.D.C. 2017) ("Although the law of the case doctrine does not automatically apply to interlocutory decisions, the court uses its underlying rationale in a rule 54(b) analysis." (citation omitted)); see also Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992).  Accordingly, while Zaccari may be correct

---

[4] As a preliminary matter, whether and how the law of the case doctrine applies to an order of a federal court within an ongoing federal case is not—as Zaccari's briefing implies, see Opp'n at 8—a question of District of Columbia law.  Rather, it is a question of federal common law.  See, e.g., Hanover Ins. Co. v. Am. Eng'g Co., 105 F.3d 306, 312–13 (6th Cir. 1997).

that the law of the case doctrine does not technically apply to the June 2021 Opinion, the policies and prudential considerations underlying it unquestionably do.

Additionally, Zaccari misunderstands what it means for an order to be interlocutory. The salience of the "interlocutory" label relates to the fact that the order is generally not immediately appealable, since it does not resolve the whole controversy. See Interlocutory, Black's Law Dictionary (11th ed. 2019). It does not mean that an order deemed "interlocutory" is not a real and binding decision of the questions presented and the factual determinations necessary to answering those questions. Subject to the court's power to, "as justice requires," reconsider those issues, they have been decided,[5] and each party may rely on that judgment and not have to constantly re-prove the issues decided therein. See, e.g., Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc., 630 F.3d 217, 227 (D.C. Cir. 2011). Likewise, the factual determinations necessary to that judgment have also been decided, with the court having limited discretion to reconsider under appropriate circumstances.

Thus, Zaccari is incorrect that Apprio may not rely on this Court's prior partial summary judgment order to meet its burden of proof as to the first two elements of its breach of contract claim. As Apprio put it, "the only elements left for the Court to decide" are whether Zaccari breached the PIIA and, if he did, whether that breach caused Apprio damages. MSJ Br. at 7.

---

[5] Prior to the 2010 amendments, Rule 56(d) made this point explicit, providing that "[i]f summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue . . . . It should then issue an order specifying what facts . . . are not genuinely at issue. The facts so specified must be treated as established in the action." Fed. R. Civ. P. 56(d)(1) (2009) (amended 2010). Similar language now appears in Rule 56(g), although authority under Rule 56(g) is limited to situations where a court partially grants and partially denies a summary judgment motion. See Fed. R. Civ. P. 56(g); see also Mack v. WP Co., 923 F. Supp. 2d 294, 301–02 (D.D.C. 2013). While this language no longer specifically addresses the situation where a court grants a partial summary judgment motion in full, it would defy credulity to interpret both the Rule and the court's inherent authority so narrowly as to say that there can be no value in a fully-granted partial summary judgment order and therefore that the parties must re-litigate the issues subject to that order. The absurdity of such an interpretation may be illustrated by the observation that had Apprio instead moved for full summary judgment, but the Court only granted partial relief and entered a Rule 56(g) order to that effect, then there would be no doubt that those facts were established in the case.

Although the court may, on motion, reconsider its prior holdings that the PIIA constituted an enforceable agreement between Zaccari and Apprio and that Zaccari assigned all his rights in the CRR Software to Apprio, this potentiality does not mean that the issues have not been decided. Hand-in-hand with that observation is that Zaccari is foreclosed from directly arguing a position that explicitly contradicts those holdings.

That said, as Zaccari repeatedly argues in his opposition that the Court's prior ruling was incorrect, the Court will construe—and Apprio has construed—his brief as a (second) request for reconsideration of this Court's June 2021 Opinion.  As the Court previously explained, see Aug. 27 Order at 1, motions under Rule 54(b) may be granted, in the court's discretion, "as justice requires," Capitol Sprinkler Inspection, 630 F.3d at 227; see also Cobell v. Norton, 355 F. Supp. 2d 531, 539 (D.D.C. 2005) (describing the court's inquiry as "whether reconsideration is necessary under the relevant circumstances").  To make this determination, a court considers whether it "patently misunderstood a party, . . . has made an error not of reasoning but of apprehension, or [if] a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court."  Singh v. George Washington Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (second alteration in original) (citation omitted).  "At the same time, a court's discretion under Rule 54(b) is . . . 'subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'"  Jordan v. U.S. Dep't of Just., Civ. A. No. 17-2702 (RC), 2019 WL 2028399, at *2 (D.D.C. May 8, 2019) (quoting Singh, 383 F. Supp. 2d at 101).  And a "Rule 54(b) motion cannot be used 'to reargue facts and theories upon which a court has already ruled' or to 'present[] theories or arguments that could have been advanced earlier.'"  Shvartser v. Lesker, 330 F. Supp. 3d 356, 360

(D.D.C. 2018) (alteration in original) (quoting <u>Dunlap v. Presidential Advisory Comm'n on Election Integrity</u>, 319 F. Supp. 3d 70, 81 (D.D.C. 2018)).

Zaccari claims that a pair of depositions since the June 2021 Opinion "revealed" disputed issues of fact that "require reconsideration of the Court's findings in granting partial summary judgment." Opp'n at 3. Specifically, he claims these two depositions demonstrate that "there is a dispute as to whether [he] assented to the material terms of the PIIA (which was not clearly decided by the Court's partial summary judgment ruling), [and] whether the CRR Software was assigned to Apprio." <u>Id.</u> Further, Zaccari argues that the Court "overlooked compelling precedent and the statute of frauds" in granting partial summary judgment. <u>Id.</u> at 9. The court will address each purported ground for reconsideration in turn.

### B. Zaccari's Newly Discovered Evidence Does Not Reveal a Genuine Material Factual Dispute

Although Zaccari states that two new depositions "revealed" disputed issues of fact that "require" the Court to reconsider its June 2021 Opinion, Zaccari fails to provide any explanation or argument as to how, and nothing that Zaccari cites from either deposition compels the Court to do so. In his brief, Zaccari cites his own deposition four times and that of Darryl Britt, Apprio's President, three times.[6] <u>See</u> Opp'n at 4, 5, 11, 13. Two of the four citations of his own deposition are cited to support undisputed facts, and Zaccari does not even state that, let alone show how, they are relevant to issues of contract formation or assignment. <u>See id.</u> at 4, 5. Likewise, one of

---

[6] In his Statement of Disputed Facts, Zaccari cites his own deposition a further nine times, plus the deposition of Britt five times. <u>See</u> Ex. A to Opp'n [ECF No. 62-1] ("DSDF") at 1–4. But he never explains which of these citations refer to newly discovered evidence of a genuine factual dispute, nor how they might support his request for reconsideration. As such, any implicit "argument" that those facts necessitate reconsideration has not been adequately presented to the Court.

the three citations of the Britt deposition—that "Apprio has made changes to the PIIA"—is unquestionably not relevant to either issue.  See id. at 5.[7]

　　While the remaining four citations may facially have some relevance, for two of them Zaccari does not explain what exactly that relevance is, or why either fact "require[s]" the Court to reconsider its prior decision.  Instead, two of these citations are presented without further commentary as "facts that are not in dispute."  First, Zaccari cites the Britt Deposition for the proposition that "Apprio has not and cannot produce any evidence of when it first presented the PIIA to Zaccari or which version he received on June 15, 2016."  Opp'n at 4.  Presumably (since Zaccari does not explain its relevance), this fact is intended to call into question whether the terms in the version of the PIIA on which the Court relied in its June 2021 Opinion were the terms to which Zaccari agreed.  But to the extent that the deposition transcript even supports this proposition (an issue that the Court need not decide here), this evidence, at most, would show that Apprio lacks sufficient evidence of another fact, and Zaccari could have made, but chose not to make, that argument prior to the Court's June 2021 Opinion.  Zaccari accordingly waived the argument.  See, e.g., Johnson v. Panetta, 953 F. Supp. 2d 244, 250 (D.D.C. 2013).  Since Zaccari waived the argument, it can provide no grounds for reconsideration.

　　Second, and relatedly, Zaccari cites the Britt Deposition to establish that "Apprio cannot reproduce a copy of an 'E-signed' PIIA agreement."  Id.  Zaccari at least alludes to this citation in his brief, see id. at 16–17, but it fares no better.  Zaccari already raised this argument in opposing the motion for partial summary judgment.  See PSJ Opp'n at 6 n.1.  It was "perfunctory and undeveloped," see Johnson, 953 F. Supp. 2d at 250, but the Court nonetheless thoroughly

---

[7] To the extent that Zaccari intended any of these facts to be relevant to his present request, the Court finds the argument waived as Zaccari has failed to provide any argument as to their relevance, and "[i]t is not the obligation of this Court to research and construct the legal arguments available to the parties."  Johnson v. Panetta, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) (citation omitted).

considered and discussed it before concluding that Zaccari's acknowledgement of the PIIA constituted a signature, <u>see</u> Mem. Op. at 13–14.  While a subsequent discovery of a version of the PIIA with a physical or other signature (or lack thereof) by Zaccari <u>may have</u> been new evidence meriting reconsideration, this renewed argument regarding the supposed continued absence of evidence does not.  <u>See, e.g.</u>, <u>Estate of Gaither ex rel. Gaither v. Dist. of Columbia</u>, 771 F. Supp. 2d 5, 13 (D.D.C. 2011) (refusing to entertain a Rule 54(b) motion "as a vehicle for rearguing the merits of [a] position where [the party] failed to do so adequately in the first place").

The only evidence from either deposition that Zaccari actually discusses is to support the propositions that "Zaccari did not intend to assign any rights in the CRR Software to Apprio," Opp'n at 13, and that "[w]hile he was an employee of Apprio, Zaccari repeatedly informed Apprio that he was the owner of the CRR software," <u>id.</u> at 11.  But what a party subjectively intended is not relevant under District of Columbia law when his objective manifestations indicated an intent to contract.  <u>E.g.</u>, <u>E.M. v. Shady Grove Reprod. Sci. Ctr. P.C.</u>, 496 F. Supp. 3d 338, 394–95 (D.D.C. 2020).  This fact is therefore not material.  Moreover, Zaccari already made this very argument in his initial opposition, PSJ Opp'n at 6–10, and the Court considered and rejected it, Mem. Op. at 15–16.  It thus cannot support reconsideration.

But above all else, this supposedly newly discovered evidence was from Zaccari's own deposition.  Zaccari should have already known what he intended when he acknowledged the PIIA on June 15, 2016.  This is thus not newly discovered evidence: Zaccari could have submitted an affidavit during briefing on Apprio's partial summary judgment motion discussing his intentions.

There is thus no merit to the argument that the cited materials in these two depositions provide grounds to reconsider the Court's June 2021 Order, let alone that they "require" it to do so.  Nonetheless, the Court will give Zaccari the benefit of the doubt and reconsider to the very

limited extent necessary to ensure that the Court considered this evidence at summary judgment. In so reconsidering, however, the Court will not disturb any of the conclusions from its June 2021 Opinion: as explained above, each "new" fact either is patently irrelevant, was available to Zaccari before entry of that Opinion (and therefore Zaccari has waived his right to rely on it), or is immaterial.

### C. The Court Did Not "Overlook Compelling Precedent"

Zaccari next argues that reconsideration is proper because the Court "overlooked compelling precedent" both in concluding that there was a meeting of the minds as to all material terms in the PIIA and in finding that Apprio satisfied the E-Sign Act's statute of frauds. Opp'n at 9. But Zaccari fails to cite any case that would allow the Court to reconsider. Rather, his argument amounts to pure disagreement with the June 2021 Opinion, which is not an appropriate basis for reconsideration.

#### i.   Meeting of the Minds

Zaccari argues that the PIIA is not an enforceable contract because "an enforceable contract does not exist unless there has been a 'meeting of the minds' as to all material terms," and no such meeting of the minds between Zaccari and Apprio ever occurred. Opp'n at 11 (quoting Bailey v. Fed. Nat'l Mortg. Ass'n, 209 F.3d 740, 746 (D.C. Cir. 2000)). In support of this point, Zaccari relies predominantly on one case from the District of Columbia Court of Appeals. See Opp'n at 11–12. But rather than establishing that no meeting of the minds occurred between Zaccari and Apprio, this case instead supports this Court's June 2021 Opinion.

14

Zaccari discusses <u>Kramer Associates, Inc. v. Ikam, Ltd.</u>, in which the District of Columbia Court of Appeals affirmed the trial court's conclusion that no meeting of the minds occurred.[8]  888 A.2d 247, 253 (D.C. 2005).  But <u>Kramer</u> is factually distinguishable in that the parties, at most, reached only a verbal agreement, leaving it impossible for the court to determine which of Kramer's or Ikam's terms were part of any contract.  <u>See Kramer</u>, 888 A.2d at 252–53.  Its reasoning is inapplicable here where all terms are in one written document.  <u>See</u> Mem. Op. at 10– 16.  Moreover, since any agreement in <u>Kramer</u> was verbal, the question was whether a meeting of the minds could be inferred from the conduct of the parties.  <u>See Kramer</u>, 888 A.2d at 252–53.  In this case, however, the Court has already concluded that Zaccari objectively manifested assent to—<u>i.e.</u>, functionally signed—the PIIA.  Mem. Op. at 10–16.  There is thus no need to infer a meeting of the minds from conduct, as Zaccari seems to think, Opp'n at 12–13, because, unlike in <u>Kramer</u>, Zaccari functionally signed the contract.  Far from showing that the Court erred in its June 2021 Opinion, <u>Kramer</u> is entirely consistent with the Court's reasoning there.[9]

Zaccari raises two further arguments that merit little discussion.  He contends that there is insufficient evidence to support his intent to be bound by the PIIA, but as the Court has thoroughly explained, his acknowledgement alone is sufficient.  Mem. Op. at 12–16.  He also contends that the Court's reliance on cases where parties signed an agreement is inappropriate because he did not sign the PIIA, but this argument fails for the same fundamental reason: Zaccari's

---

[8] Contrary to Zaccari's assertions, <u>Kramer</u> did not affirm a decision of "this Court[]," Opp'n at 11, 12, but of the D.C. Superior Court.  Furthermore, the Court has already considered <u>Kramer</u>, and in fact cited it in the June 2021 Opinion at 9.  As one judge in this District has noted, reconsideration is appropriate where a court failed to even consider a decision, but not "merely for misapplication of precedent."  <u>U.S. ex rel. Morsell v. NortonLifeLock, Inc.</u>, --- F. Supp. 3d ----, Civ. A. No. 12-800 (RC), 2021 WL 3363446, at *3 (D.D.C. Aug. 3, 2021).

[9] Zaccari further argues that "[a]cknowledgement of merely 'reading a company policy' . . . does not in any way mean that the employee assents to the policy."  Opp'n at 12.  This argument flatly ignores the circumstances of that acknowledgement, which the Court discussed at length, <u>see</u> Mem. Op. at 10–16, and provides no proper ground for reconsideration.  The Court refuses to regurgitate its reasoning <u>ad nauseam</u> simply because Zaccari disagrees.

acknowledgement carried the same legal effect as a signature in the particular circumstances of this case.  See id. (concluding that Zaccari's acknowledgment "amounts to" a signature).  While Zaccari may disagree with those conclusions, disagreement alone is an inappropriate reason to ask the court to reconsider.  As he does not state any grounds under which reconsideration of these arguments under Rule 54(b) would be permissible, the Court will not reconsider.[10]

    ii.  Statute of Frauds

Zaccari makes a separate but related argument that as a matter of law, the E-Sign Act cannot apply since "Apprio cannot produce any evidence of Zaccari's assent" to the PIIA, Opp'n at 16–17, and under the Act, an electronic signature is effective only if it is "executed or adopted by a person with the intent to sign the record," 15 U.S.C. § 7006(5).  He also contends that Apprio cannot satisfy the Statute of Frauds under 37 C.F.R. § 201.4(d)(1) because, where the signature is neither handwritten nor a typewritten name, "such as when an individual clicks a button on a Web site," there must still be "a description of the nature of the signature and documentation evidencing the existence of the signature (e.g., a database entry . . . showing that a particular user agreed to the terms by clicking 'yes' on a particular date)."  Opp'n at 17 (quoting 37 C.F.R. § 201.4(d)(1)).

But again, the Court already specifically addressed and rejected this argument in its June 2021 Opinion.  See Mem. Op. at 14.  Zaccari's current protestation that "disputed facts exist as to Zaccari's intent to sign," Opp'n at 17, does not carry the day as the dispute is irrelevant.  Zaccari's subjective intent is simply not material when his objective actions manifested an intent to contract.

---

[10] Zaccari also argues that the fact that he sought to enforce the PIIA in the 1560 litigation "is not sufficient" to indicate that he intended to be bound by it or assented to it.  Opp'n at 16.  While the Court noted this fact, it never concluded that the attempted enforcement, standing alone, was sufficient to establish Zaccari's assent.  See Mem. Op. at 15.  Rather, the Court stated it was a "further undisputed piece of evidence suggesting that [Zaccari] did manifest an intent to be bound by it."  Id. (emphasis added).  Because there is other undisputed evidence that establishes as a matter of law that Zaccari assented to the PIIA, the Court did not previously, and will not now, decide whether Zaccari's attempt to enforce the PIIA in the 1560 litigation would be sufficient evidence on its own.

Rather, as the Court previously held (and would hold today if the issue were still open), the undisputed evidence proffered by Apprio showed that Zaccari acknowledged the PIIA, that Zaccari intended to acknowledge the PIIA, and that acknowledgment constituted a signature for purposes of the E-Sign Act.  Mem. Op. at 13–14.

Moreover, Zaccari's further argument regarding the Code of Federal Regulations was available to him previously, but he chose not to make it.  The argument was therefore waived.  See, e.g., United Mine Workers of Am. 1974 Pension v. Pittston Co., 984 F.2d 469, 478 (D.C. Cir. 1993).[11]  Hence, the Court will not reconsider its previous grant of partial summary judgment on this ground.

## II.    APPRIO IS ENTITLED TO SUMMARY JUDGMENT THAT ZACCARI BREACHED THE PIIA

Under District of Columbia law, to prevail on a claim for breach of contract, a plaintiff must establish: "(1) a valid contract between the parties, (2) an obligation or duty arising out the contract, (3) a breach of that duty, and (4) damages caused by breach."  Brown v. Sessoms, 774 F.3d 1016, 1024 (D.C. Cir. 2014) (quoting Tsintolas Realty Co. v. Mendez, 984 A.2d 181, 187 (D.C. 2009)).  As discussed in the previous section, the Court has already determined that the PIIA constituted a valid and enforceable agreement between Zaccari and Apprio, and that, pursuant to the PIIA, Zaccari assigned to Apprio any rights he had in the CRR Software.  Thus, Apprio has already carried its burden of proof as to the first two elements of its breach of contract claim.  The instant motion for summary judgment therefore concerns only the latter two elements.  The Court

---

[11] To the extent that Zaccari bases this waived argument on newly discovered evidence, the crux of the argument is that Apprio still lacks evidence sufficient to satisfy the statute of frauds.  But the Court's June 2021 Opinion did not condition its holding on Apprio subsequently finding through discovery a database entry showing that Zaccari agreed to the PIIA on June 15, 2016.  To the contrary, the Court specifically noted that Apprio had already produced an electronic record of the process sufficient to meet the requirements of the E-Sign Act's statute of frauds. Mem. Op. at 14.  Zaccari pointedly ignores this aspect of the Court's opinion.

will address whether, as a matter of law, Zaccari breached an obligation or duty under the PIIA, and whether any such breach damaged Apprio.

**A. Breach of Duty**

As the Court has already held, the CRR Software was Apprio's "Proprietary Information" pursuant to Section 2.3 of the PIIA.  Mem. Op. at 21–23.  Through this provision, Zaccari assigned all his rights in the CRR Software to Apprio.  Id. at 21.  Any invention assigned to Apprio through Section 2.3 of the PIIA became a "Company Invention."  Id. at 17.

Apprio argues that there is no dispute of material fact that, subsequent to acknowledging the PIIA, Zaccari committed multiple breaches of the PIIA.  MSJ Br. at 10–11.  Apprio is correct.  The uncontroverted evidence before the Court establishes that Zaccari breached at least three provisions of the PIIA.[12]

i.   PIIA Section 1.1

Apprio first argues that Zaccari breached Section 1.1 of the PIIA in two ways: (1) by "submit[ing] a copyright application for the CRR Software to the U.S. Copyright Office in his own name, without cooperating with Apprio, that failed to disclose that the CRR Software was previously assigned to Apprio," MSJ Br. at 9, and (2) by "disclos[ing] Apprio Proprietary Information in that fraudulent registration without Apprio's authorization," id.

Section 1.1 of the PIIA provides that, "[a]t all times during [Zaccari's] employment or engagement as an independent contractor by [Apprio], as the case may be . . . and thereafter, [he] will hold in strictest confidence and will not disclose, use, lecture upon or publish any of [Apprio's]

_____

[12] Although Apprio brings only one count for "Breach of Contract," see Compl. [ECF No. 1] at 13–16, the Court construes this count as multiple divisible claims for breach of contract.  As such, the Court will address each alleged breach in turn, even though summary judgment in favor of Apprio on any one of them would be sufficient to resolve the present motion in Apprio's favor.

Proprietary Information," except as required in connection with his employment, or if properly authorized by Apprio in writing. Statement of Undisputed Material Facts in Supp. of Apprio Inc.'s Mot. ("SUMF") Ex. K, Proprietary Information and Assignment of Inventions Agreement [ECF No. 59-14] at 1 (emphasis added). Zaccari submitted a copyright application for the CRR Software to the U.S. Copyright Office, in his own name. SUMF Ex. M, Remote Videoconference Dep. of Neil Zaccari [ECF No. 59-16] at 18:20–21:15; SUMF Ex. N, Certificate of Registration [ECF No. 59-17]; SUMF Ex. T, Mail Certificate [ECF No. 59-22]. Included in his application was a copy of the CRR Software's underlying code. SUMF Ex. M at 22:8–16. Zaccari filed his application without any authorization from Apprio. SUMF Ex. L, Decl. in Supp. of Apprio's Mot. for Summ. J. on Zaccari's Breach of Contract [ECF No. 59-15] ¶¶ 2–3; SUMF Ex. M at 30:22–31:11. This is sufficient for Apprio to meet its initial evidentiary burden of showing that Zaccari disclosed, used, or published Apprio's Proprietary Information in breach of his obligations and duties under Section 1.1 of the PIIA.

The burden therefore shifts to Zaccari to cite materials in the record to show that there is a genuine dispute as to any material fact. Although Zaccari asserts that "there is a dispute as to . . . whether Zaccari breached any of [the PIIA's] terms," Opp'n at 3, this assertion standing alone is just a bald legal conclusion and is therefore entitled to no weight, see, e.g., Dynamic Visions Inc, 971 F.3d at 337; Saunders v. Mills, 172 F. Supp. 3d 74, 96 (D.D.C. 2016). Beyond such conclusory statements, see Opp'n at 3, 17, Zaccari offers no argument or rebuttal to Apprio's evidence regarding breach. Rather, Zaccari almost exclusively opted to re-litigate whether the PIIA constituted an enforceable contract between Zaccari and Apprio. See generally Opp'n at 9–17.

Although Zaccari offers no argument, he cites one "fact" in his Statement of Disputed Facts that appears to attempt to contradict Apprio's evidence regarding his alleged breach of Section 1.1

of the PIIA.  Zaccari cites his own declaration and deposition in support of the supposedly disputed fact that "Apprio did not lose the benefit of being the named owner of record of the copyright registration for the CRR Software."  Opp'n Ex. A, Def.'s Statement of Disputed Facts ("DSDF") [ECF No. 62-1] ¶ 25.  In his declaration, he expands briefly on this fact, stating that Apprio did not lose any benefit "because it did not own" the CRR Software.  DSDF Ex. 1, Decl. of Def. in Opp'n to Mot. [ECF No. 62-2] ("Def.'s Decl.") ¶ 16; see also SUMF Ex. M at 32:10–33:25.[13]

While the Court must regard Zaccari's statements as true and draw all inferences in his favor, the Court may disregard conclusory assertions that lack a cited factual basis in the record.  Unfortunately for Zaccari, his assertions that Apprio did not own the CRR software are conclusory, and they contradict the June 2021 Opinion where the Court concluded, as a matter of law, that Zaccari had assigned his rights in the CRR Software to Apprio when he acknowledged the PIIA without disclosing the software as a Prior Invention.  Mem. Op. at 21–24.  The remaining facts Zaccari cites in his Statement of Disputed Facts do not establish a genuine dispute, as they are either irrelevant to issues of breach or are potentially material only if the Court ignores its prior decision.  And to the extent any facts in his Statement of Disputed Facts have some hidden relevance, Zaccari has failed to provide argument regarding them, so any such argument is waived.

The Court therefore assumes that all of the above-mentioned uncontroverted facts cited by Apprio in its present motion are admitted.  See L. Civ. R. 7(h)(1).  Because these facts are sufficient to establish a breach of contract under District of Columbia law, and because Zaccari has failed to establish a genuine dispute of material fact, Apprio has proved that Zaccari breached Section 1.1 of the PIIA.

---

[13] Zaccari's deposition appears as Exhibit 3 to his Statement of Disputed Facts.  DSDF Ex. 3, Remote Videoconference Dep. of Neil Zaccari [ECF No. 62-4].  For consistency throughout this section, the Court will cite Zaccari's Deposition as SUMF Ex. M whenever it is referenced.

ii.   PIIA Section 3.2

Apprio next contends that Zaccari breached Section 3.2 of the PIIA by suing the United

States for copyright infringement.  MSJ Br. at 9.  Section 3.2 provides:

> I agree that for the period of My Service and for two (2) years after the Termination
> Date, I will not directly or indirectly (a) solicit, divert, appropriate to or accept on
> behalf of any Competing Business . . . , or (b) attempt to solicit, divert, appropriate
> to or accept on behalf of any Competing Business, any business from any
> Customer . . . .

SUMF Ex. K at 3.  This section defines "Competing Business" as "a business that develops,

markets[,] manufacturers[,] sells, distributes or otherwise profits from products or services that are

in competition with a business activity in which [Apprio] is engaged in or has plans to engage in."

Id.  And "Customer" is defined as "any customer or actively sought prospective customer of

[Apprio] with whom [Zaccari has] dealt, whose dealings with [Apprio] have been supervised by

[Zaccari] or about whom [Zaccari has] acquired Proprietary Information or Third Party

Information in the course of performing services on behalf of [Apprio]."  Id.

Apprio establishes that the United States was a customer of Apprio during Zaccari's

employment, and that Zaccari knew that the United States was a customer.  SUMF Ex. M at 46:9–

23.  Zaccari's employment with Apprio ended on or about May 11, 2017.  E.g., SUMF Ex. A,

Decl. in Supp. of Apprio's Summ. J. Mot. [ECF No. 59-4] ¶ 22.  On July 2, 2018—i.e., during the

period within which Section 3.2 remained effective against him—Zaccari initiated suit in the Court

of Federal Claims against the United States, asserting that its use of the CRR Software infringed

Zaccari's copyright and seeking damages for the alleged infringement.  SUMF Ex. O, Compl.

[ECF No. 59-18] at 8–10, 13–14.

But Apprio does not offer sufficient evidence to show that Zaccari was a "Competing

Business."   Apprio does not contend that Zaccari's alleged Competing Business developed,

marketed, manufactured, sold, or distributed products or services;[14] instead, Apprio states solely that, by suing the government, Zaccari "attempt[ed] to profit from the CRR Software."  MSJ Br. at 4; accord SUMF ¶ 15.  But to be a Competing Business under Section 3.2 of the PIIA, Zaccari would have had to actually profit, not attempt to profit, from the software.  Although Section 3.2 distinguishes between acts that "solicit, divert, appropriate to or accept on behalf of any Competing Business" and acts that "attempt to" do the same, see SUMF Ex. K at 3, the definition of "Competing Business" omits any mention of attempt.  Rather, its plain language unambiguously says that only profiting—not merely attempting to profit—makes a business a "Competing Business" under the PIIA.  See id.

Apprio cites no evidence that Zaccari ever actually profited from his alleged Competing Business.[15]  To be sure, Zaccari was attempting to profit from his dealings with the government. See SUMF Ex. M at 41:5–42:17, 46:24–48:7 (Zaccari's deposition testimony that he was "seeking money" by filing suit against the United States for using the CRR Software); SUMF Ex. B, Def.'s Objs. & Resps. to Pl.'s First Reqs. For Admis. [ECF No. 59-5] at 9 (Request 47) (Zaccari admitting that he "sued the U.S. Government seeking to recover a money award related to the CRR Software for his own benefit"); id. at 9 (Request 46) (Zaccari admitting that his counsel sent a cease-and-desist letter to the government and requested "settlement of [his] claims").  While Zaccari would have profited had he settled or successfully litigated his suit, or if he had successfully negotiated a license with the government, Apprio offers no evidence that he did so.  There is therefore no evidence that Zaccari ever had a Competing Business as defined by the PIIA, only that Zaccari

---

[14] Thus, the Court need not decide whether Zaccari's suit would have qualified as such under the PIIA.

[15] For this reason, the Court need not determine whether damages awarded for copyright infringement and misappropriation of trade secrets would constitute profits "from products or services."

attempted to create one.  Accordingly, on the record before the Court and on the theory Apprio advances, the Court cannot conclude that Zaccari breached Section 3.2 of the PIIA.

### iii.  PIIA Section 7

Apprio's third theory of breach is that Zaccari retained copies of the CRR Software and its underlying code after his termination, in violation of Section 7 of the PIIA.  MSJ Br. at 9.  Section 7, entitled "RETURN OF COMPANY DOCUMENTS AND PROPERTY," provides that at the end of Zaccari's employment with Apprio, he would "deliver to [Apprio] . . . any other material containing or disclosing any Company Inventions . . . or Proprietary Information of [Apprio]."  SUMF Ex. K at 3.  Apprio cites evidence to show that Zaccari retained copies of the CRR Software following termination of his employment.  SUMF Ex. M at 22:8–23:5, 50:4–51:12; SUMF Ex. B at 10 (Requests 54 and 55).  Since the CRR Software is both a Company Invention and Proprietary Information of Apprio, see generally Mem Op. at 16–24, Apprio has established that Zaccari breached Section 7.

In his brief, Zaccari offers no argument regarding Section 7, but he asserts in his Statement of Disputed Facts, citing his declaration and deposition testimony, that he "did not keep copies of any Apprio Proprietary Information after the termination of his employment with Apprio."  DSDF ¶ 17.  But this assertion is just another instance of Zaccari implicitly disagreeing with this Court's determination that the CRR Software is Apprio's Proprietary Information.  Zaccari admitted in the very deposition he now cites that, at the time of his termination, he did not provide Apprio every copy of the CRR Software and underlying code in his possession.  SUMF Ex. M at 49:20–51:12.  Because, as noted above, the CRR Software has been deemed to be Apprio's Proprietary Information, Zaccari has in effect admitted that he retained copies of Apprio's Proprietary Information after the termination of his employment and thereby breached Section 7 of the PIIA.

His assertion to the contrary is nothing more than a subtle way of disagreeing with the June 2021 Opinion. Apprio is, therefore, entitled to judgment as a matter of law on its claim that Zaccari breached Section 7 of the PIIA.

### iv.  PIIA Section 2.8

Finally, Apprio alleges that by refusing to sign a confirmatory assignment to Apprio of the CRR Software and the copyright in the CRR software, Zaccari breached Section 2.8 of the PIIA. MSJ Br. at 9–10. Entitled "Enforcement of Proprietary Rights," Section 2.8 provides that Zaccari must "assist [Apprio] in every proper way to obtain, and . . . enforce, United States and foreign Proprietary Rights relating to Company Inventions." SUMF Ex. K at 2. In furtherance of that obligation, Section 2.8 requires Zaccari to "execute, verify and deliver such documents and perform such other acts" that Apprio "reasonably requests" Zaccari to perform in order to "obtain[]" or "perfect[]" the assignment of Proprietary Rights in Company Inventions, both during and after the conclusion of his employment. Id. This provision specifically requires Zaccari to "execute, verify and deliver assignments of such Proprietary Rights to the Company or its designee." Id.

Apprio provided Zaccari with a confirmatory assignment of the CRR Software and the copyright in the CRR Software. SUMF Ex. M at 43:14–45:4; SUMF Ex. Q, Confirmatory Assignment of Copyright [ECF No. 59-19]. Zaccari refused to execute this confirmatory assignment. SUMF Ex. B at 9 (request 49); SUMF Ex. M at 45:5–9, 46:4–8. Because the Court has already determined that the CRR Software is a Company Invention, Zaccari was required to execute this confirmatory assignment under Section 2.8, and his failure to do so is a breach of the PIIA.

Once again, beyond conclusory statements that he did not breach the PIIA, Zaccari offers no argument as to why this is not a breach, and none of the facts he cites in his Statement of Disputed Facts appear relevant to this theory.  Hence, the facts cited by Apprio are deemed admitted.  See L. Civ. R. 7(h)(1).  Accordingly, Apprio is entitled to summary judgment on this theory.

### B.  Damages and Reasonable Fees

Apprio argues that there is no dispute of material fact that it has been damaged, in particular because it "lost the benefit of being the named owner of record of the U.S. Copyright for the CRR Software."  MSJ Br. at 11.  Additionally, Zaccari's breaches "required Apprio to expend time and resources, including its reasonable attorneys' fees, costs and expenses (which are recoverable to the prevailing party under Section 11.7 of the PIIA) to enforce its rights under the PIIA against Zaccari."  Id.  In support of this argument, Apprio filed under seal two exhibits: (1) a declaration signed by Apprio President Daryl Britt, and (2) monthly legal invoices that Apprio has paid.  See SUMF ¶¶ 22–23; Min. Order, Jan. 25, 2022 (ordering that plaintiff's exhibits L and U be filed under seal).

Apprio has met its burden of showing that it has been sufficiently damaged by Zaccari's breaches.  Zaccari is in violation of several obligations imposed by the PIIA, including that after termination he return to Apprio the CRR Software and its source code and that he execute a confirmatory assignment of his interest in the CRR Software.  Under the PIIA, Apprio is entitled both to possession of all copies of the CRR Software and to being the named owner of the copyright for the software.  By withholding these benefits in breach of the PIIA, Zaccari has injured Apprio, and Apprio is entitled to an order requiring Zaccari to relinquish its proprietary information and to assign the copyright to Apprio.  Zaccari has not offered any evidence or argument to establish a

genuine dispute as to whether his breach injured Apprio.[16]  Summary judgment on Apprio's breach

of contract claim is therefore appropriate, and the Court will order Zaccari to relinquish all copies

of the CRR software and related documentation to Apprio and to formally assign the copyright

registration he filed for the CRR software to Apprio.[17]

       To be sure, Apprio has not made any showing of specific monetary loss due to Zaccari's

breaches other than its attorney's fees and litigation costs.[18]  But under District of Columbia law,

a party to a contract is entitled to relief from a breach even if it cannot show monetary injury.  See

Wright v. Howard Univ., 60 A.3d 749, 753 n.3 (D.C. 2013) ("[A] cause of action for breach of

contract can also lie, even in the absence of proof of monetary injury, if the plaintiff can establish

entitlement to declaratory relief or specific performance.").  Rather, "it is the breach of contract,

not the amount of damage sustained, . . . which gives the ground of action."  Id. at 753 (quoting

---

[16] Again, although Zaccari provides no argument as to this element—and therefore waived any argument he may have had—he cites a pair of facts in his Statement of Disputed Facts that contradict Apprio's damages theories: that "Apprio did not lose the benefit of being the named owner of record of the copyright registration for the CRR Software," and that "Zaccari cannot and did not require Apprio to expend time and resources to enforce any rights Apprio asserts it has under the PIIA."  See DSDF ¶ 25–26.  The Court addressed the first fact in its discussion of Zaccari's alleged breach of Section 1.1, and the fact is immaterial to damages for the same reason it is immaterial to breach.  In support of his second fact, Zaccari cites solely his declaration, in which he states that he "ha[s] no authority or ability to require Apprio to expend time or resources to do anything."  Def.'s Decl. ¶ 17.  The argument Zaccari is clearly implying by this "fact" is that he cannot be legally responsible for Apprio's expenses because Apprio could have chosen to bite the bullet instead of suing to vindicate its rights.  Even had Zaccari properly presented it, the Court would not seriously entertain this position.

[17] In its complaint, Apprio also requests a prospective injunction barring Zaccari from breaching the PIIA in the future, including by "initiating or continuing any litigation against Apprio, the United States, . . . or any other Apprio customer involving the CRR software" or by "requesting compensation in any fashion from Apprio, the United States, . . . or any other Apprio customer with respect to the CRR software."  Compl. at 17.  Apprio seems to incorporate this request by reference in its summary judgment brief, see MSJ Br. at 11 (seeking "entry of final judgment awarding the relief requested in Apprio's complaint"), but it has provided neither argument nor evidence in support of its entitlement to this relief, see, e.g., eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (setting forth a four-factor test which "a plaintiff seeking a permanent injunction must satisfy . . . before a court may grant such relief").  Apprio has thus failed to demonstrate its entitlement to a prospective injunction.

[18] Despite the fact that Apprio's complaint seeks "an order requiring Zaccari to remit to Apprio all actual damages . . . including Apprio's expenses and attorneys' fees," it has introduced no evidence regarding any monetary damages other than its attorneys' fees and other litigation costs.  But, as discussed below, Apprio's entitlement to attorney's fees in this case must be decided via a post-judgment motion under Federal Rule of Civil Procedure 54(d)(2) and are thus not considered "actual damages" at this stage.  Thus, even if Apprio has technically requested an award of money damages related to Zaccari's breaches of the PIIA, it has not demonstrated its entitlement to any such relief.

Chandler & Taylor Co. v. Norwood, 14 App. D.C. 357, 363 (D.C. Cir. 1899)).  In this case, Apprio

has shown that it is entitled to a declaratory judgment regarding its rights in the CRR Software,

see generally Mem. Op., and it has now also shown that Zaccari breached the PIIA by depriving it

of property and benefits to which it was entitled.  These injuries are sufficient to sustain a breach

of contract action.

Apprio is also a "prevailing party" in this litigation.  As such, it is entitled to reasonable

attorney's fees under section 11.7 of the PIIA, which provides:

> In the event that any suit or action is instituted under or in relation to this
> Agreement, including without limitation to enforce any provision in this
> Agreement, the prevailing party in such dispute shall be entitled to recover from
> the losing party all reasonable fees, costs and expenses of enforcing any right of
> such prevailing party under or with respect to this Agreement, including without
> limitation, such reasonable fees and expenses of attorneys and accountants, which
> shall include, without limitation, all fees, costs and expenses of appeals.

SUMF Ex. K at 4.  "[W]here a contract provides that fees are to be awarded to the prevailing party,

the fees will be collateral to the merits of the case and will not be an element of damages to be

proved at trial."  Calomiris v. Calomiris, 3 A.3d 1186, 1193 (D.C. 2010).  Accordingly, pursuant

to Federal Rule of Civil Procedure 54(d)(2)(A), any "claim for attorney's fees . . . must be made

by motion," and in this District, "[i]n any case in which a party may be entitled to an attorney's

fee from another party, the Court may, at the time of entry of final judgment, enter an order

directing the parties to confer and to attempt to reach agreement on fee issues," L. Civ. R. 54.2(a).

Apprio has requested just such an order, MSJ Br. at 11–12, and the Court will grant this

request.  Pursuant to Local Rule 54.2(a), the Court will direct the parties to meet and confer

regarding the amount of Apprio's reasonable fees, costs, and expenses it is due for enforcing its

rights under the PIIA and to attempt to reach agreement on all fee issues.  The Court will also stay

the deadline to file a motion for attorney's fees under Federal Rule of Civil Procedure 54(d)(2)(B).

Pursuant to the order, the Court will set a status conference for April 29 at 10:00 AM via Teleconference/VTC, at which the Court will (1) determine whether settlement of any and or all aspects of the fee matter has been reached, (2) enter judgment for any fee on which agreement has been reached, (3) make the determinations concerning appeal required by Local Rule 54.2(b), and (4) set a schedule for completion of any fee litigation.

## CONCLUSION

For the foregoing reasons, the Court will reconsider its June 2021 Opinion and Order only to the very limited extent necessary to ensure that it considered any purportedly newly discovered evidence in its summary judgment adjudication. In so reconsidering, however, the Court will not disturb its prior holding that there is no genuine dispute of material fact that the parties entered into a binding contract and that Zaccari assigned his proprietary rights in the CRR Software to Apprio pursuant to the contract. Additionally, while the Court concludes that Apprio has not proved that Zaccari breached Section 3.2 of the PIIA, the Court concludes that Apprio's uncontroverted evidence establishes that there is no genuine dispute of material fact that Zaccari breached Sections 1.1, 7, and 2.8 of the PIIA. Finally, the Court concludes that Apprio has been injured by Zaccari's breaches of the PIIA. The Court will accordingly enter an Order granting Apprio's motion for summary judgment, declaring Apprio's rights in the CRR Software, ordering Zaccari to relinquish to Apprio all copies of the CRR Software and to execute an assignment to Apprio of his copyright in the CRR Software, and directing the parties to meet and confer regarding attorney's fees and costs due to Apprio as the "prevailing party" under the PIIA.

/s/
JOHN D. BATES
United States District Judge

Dated: March 31, 2022