UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| APPRIO, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 18-2180 (JDB) |
| NEIL ZACCARI, | |
| Defendant. | |

**MEMORANDUM OPINION**

This copyright and contract dispute has been litigated, relitigated, and appealed over the past seven years.  The plaintiff (Apprio, Inc., a government contractor) has long since prevailed, having won summary judgment in this Court and appellate affirmance thereafter.  Apprio now asks the Court to enforce an order the Court issued in granting summary judgment, and, separately, to award Apprio the attorney's fees it spent litigating the matter.  The Court, finding the defendant (Neil Zaccari, a former employee of Apprio) in contempt of its order, will order Zaccari to comply within 21 days or face contempt sanctions.  And it will grant Apprio's motion for attorney's fees, albeit in a substantially reduced amount.

**Background**

The once-fruitful employment relationship between Neil Zaccari and Apprio, Inc. has devolved into a litigious mess.  The relationship began when Zaccari started work for Apprio, a government contractor for a federal agency within the Department of Defense, in November 2015.  See Apprio, Inc. v. Zaccari ("Apprio I"), Civ. A. No. 18-2180 (JDB), 2021 WL 2209404, at *1 (D.D.C. June 1, 2021).  Zaccari came on board to help implement software to streamline the

agency's receipt and review of government contracts.  Id.  He appears to have been a good fit for the job, as he soon developed a piece of software useful to Apprio's work.  See id. at *2.

Disagreement over the ownership of that software (the "CRR Software") launched years of litigation.  The disagreement centered over the meaning and enforceability of an assignment of rights (the "Proprietary Information and Assignment of Inventions Agreement," or "PIIA") that Zaccari signed as part of his employment.  See id. at *1.  In brief, the PIIA granted Apprio "all trade secret, patent, copyright, mask work and other intellectual property rights throughout the world" in Zaccari's inventions.  Id. at *2; see also PIIA [ECF No. 1-5] ¶¶ 2.1–2.3.  The PIIA also granted reasonable attorney's fees to the "prevailing party" in any lawsuit enforcing the PIIA.  Id. ¶ 11.7.  By now, it is settled that the PIIA granted Apprio ownership over the CRR Software and that it therefore obligated Zaccari to relinquish his copies of the CRR Software and assign all rights in it to Apprio.  But the road to that conclusion was not short.

Before he was a defendant, Zaccari was a plaintiff.  He fired the first shot: Seeking $63 million in damages, he sued Apprio in this Court, alleging that Apprio had breached the PIIA by failing to obtain his written authorization before using the CRR Software; had infringed a copyright Zaccari held in the CRR Software; and had engaged in civil conspiracy and trade secret misappropriation.  See Zaccari v. Apprio, Inc. ("Zaccari"), 390 F. Supp. 3d 103, 107 (D.D.C. 2019); Compl. [ECF No. 1, Civ. A. No. 18-1560] ("1560 Compl.") at 14.  That case, which has come to be known as "the 1560 matter" due to its case number, came to a quick end when the Court granted Apprio's motion to dismiss.  Zaccari, 390 F. Supp. 3d at 114.  Zaccari's breach-of-contract argument, the Court explained, got the PIIA exactly backwards: "the purpose of the provision" under which Zaccari sued was in fact "to protect Apprio from precisely the type of suit that Zaccari" brought.  Id. at 110.  Zaccari's copyright-infringement claim, meanwhile, could be

2

heard only in the Court of Federal Claims because Apprio's alleged infringement had occurred with the government's "authorization and consent." Id. at 110–11; see 28 U.S.C. § 1498(b). Finally, the conspiracy claim fell along with the copyright claim, while the trade secret misappropriation claim was unsupported by anything other than "naked assertions." Zaccari, 390 F. Supp. 3d at 112–14. Zaccari did not appeal—although he did attempt to amend his complaint, a request the Court denied. See Order [ECF No. 27, Civ. A. No. 18-1560] at 2.

At the conclusion of the 1560 matter, Apprio moved to recover the attorney's fees it had spent defending against the breach-of-contract and copyright claims. See Apprio Inc.'s Mot. for Att'y Fees [ECF No. 21, Civ. A. No. 18-1560] ("1560 Att'y Fees Mot."). Apprio invoked two different bases for doing so. For the contract claim, Apprio looked to the contract itself, as the PIIA granted "reasonable fees and expenses of attorneys" to the "prevailing party" in a dispute "instituted under or in relation" to the PIIA. Att'y Fees Mot. at 3–5. And for the copyright claim, Apprio looked to the Copyright Act, which enables a court "in its discretion" to "award a reasonable attorney's fee to the prevailing party" in a copyright action. 17 U.S.C. § 505; see 1560 Att'y Fees Mot. at 5–8.

But by then, Apprio had filed its own countersuit against Zaccari in this case, which would come to be known as "the 2180 matter." See Compl. [ECF No. 1]. So the Court postponed the attorney's fees request, denying it without prejudice and explaining that the Court would consider a renewed motion for attorney's fees covering both the 1560 matter and the 2180 matter at the conclusion of the latter. See Order [ECF No. 27, Civ. A. No. 18-1560] at 2.

The 2180 matter occupied much more time than the 1560 matter, but it too resulted in a clear victory for Apprio. Apprio alleged that Zaccari had breached the PIIA by, among other things, (1) refusing to turn over all copies of the CRR Software in his possession and (2) refusing

to execute a formal assignment of property rights in the CRR Software to Apprio.  See Apprio I, 2021 WL 2209404, at *2.

Over the course of multiple opinions, the Court sided with Apprio.  First, Apprio moved for partial summary judgment on the first two elements of a breach-of-contract claim: a valid contract and an obligation arising therefrom.  Id. at *4.  In defending himself, Zaccari argued that the PIIA was not a binding agreement (because he had only "acknowledged" it but had not "agreed" to it) and that, regardless, the PIIA did not assign the CRR Software to Apprio (because Zaccari had created the core of the software prior to his employment with Apprio).  Id. at *4–9.  The Court rejected all of Zaccari's arguments, noting in the process that Zaccari's contention that the PIIA was not a binding agreement contradicted his position in the 1560 matter, in which he sought to enforce the PIIA.  See id. at *7, *12.

Though the case still had yards to go, Zaccari was reluctant to move on.  He sought reconsideration of the partial summary-judgment grant, with which the Court dispensed easily, noting—importantly for the purposes of Apprio's instant contempt motion—that the Court had determined that Zaccari had "turned over any rights in [the CRR Software] that he possessed," and not only the portions of it "created or incorporated after" he signed the PIIA or began working for Apprio.  See Apprio, Inc. v. Zaccari ("Apprio II"), Civ. A. No. 18-2180 (JDB), 2021 WL 4935379, at *1–3 (D.D.C. Aug. 27, 2021).  Zaccari then moved for the entry of final judgment on Apprio's declaratory judgment claim to enable him to take an interlocutory appeal, but the Court denied that motion, too.  See Apprio, Inc. v. Zaccari ("Apprio III"), Civ. A. No. 18-2180 (JDB), 2021 WL 5799380, at *1 (D.D.C. Dec. 7, 2021).

Next, Apprio moved for summary judgment on the remaining elements of its breach-of-contract claim.  See Apprio, Inc. v. Zaccari ("Apprio IV"), Civ. A. No. 18-2180 (JDB), 2022 WL

4

971001, at *1 (D.D.C. Mar. 31, 2022).   Zaccari opposed the motion and moved again for reconsideration of the partial summary-judgment grant.  Id.  The Court again sided with Apprio, rebuffing the reconsideration request and awarding Apprio summary judgment.  Id.

Still Zaccari persisted.  He appealed, but the D.C. Circuit affirmed this Court's summary-judgment grant in full.  See Apprio, Inc. v. Zaccari ("Apprio V"), 104 F.4th 897, 903 (D.C. Cir. 2024).  He then sought en banc reconsideration, but that bid failed, too.  See Apprio, Inc. v. Zaccari, No. 22-7057, 2024 WL 3627378 (D.C. Cir. July 29, 2024).  So this Court's final grant of summary judgment to Apprio remains the binding word.

Two aspects of the final summary judgment grant are particularly relevant to the motions now before the Court.  First is what the Court ordered as a consequence of Apprio's victory: that Zaccari (1) "relinquish to Apprio all copies of the CRR Software and related documentation in his possession" and (2) "execute an assignment to Apprio designating Apprio as owner of copyright TXu002082202 titled 'CRR_Automated Search_Application."  Order [ECF No. 64] at 1; see also Apprio IV, 2022 WL 971001, at *15.

Second is a determination the Court made along the way.  Recall that the PIIA grants the "prevailing party" in "any suit or action . . . instituted under or in relation to" the PIIA the right to reasonable attorney's fees.  PIIA ¶ 11.7.  The Court determined that Apprio is a "'prevailing party' in this litigation," and that as such "it is entitled to reasonable attorney's fees under section 11.7 of the PIIA."  Apprio IV, 2022 WL 971001, at *14.

Apprio now seeks to enforce both of those conclusions.  It moves first to hold Zaccari in civil contempt because, it contends, Zaccari has failed to comply with the Court's summary-judgment order.  See Apprio Inc.'s Mot. Civil Contempt [ECF No. 74] ("Contempt Mot.").  And it moves to recover from Zaccari the attorney's fees it expended in these two actions—

$1,041,629.64 in total.  See Apprio Inc.'s Mot. Att'y Fees, Costs & Expenses [ECF No. 73] ("Att'y Fees Mot."); Decl. of John R. Hutchins [ECF No. 73-2] ("Hutchins Decl.") ¶ 10.

## Analysis

### I.    Contempt

Civil contempt sanctions aim to "coerce" recalcitrant litigants "into compliance."  Taggart v. Lorenzen, 587 U.S. 554, 560 (2019).  Civil contempt is a "severe remedy" reserved for subjects of court orders who have failed to comply despite "explicit notice of what conduct is outlawed" and what conduct is commanded.  Id. at 561 (internal quotation marks omitted).  In this analysis, ambiguities are resolved in favor of the non-movant, LaShawn A. ex rel. Moore v. Fenty, 701 F. Supp. 2d 84, 90 (D.D.C. 2010), and the party seeking contempt must show "'by clear and convincing evidence' that the alleged contemnor has violated a 'clear and unambiguous' order of the court," Potter v. District of Columbia, 126 F.4th 720, 723 (D.C. Cir. 2025) (quoting Armstrong v. Exec. Off. of the President, Off. of Admin., 1 F.3d 1274, 1289 (D.C. Cir. 1993)).  But if the movant makes the requisite showing, it is entitled to an order of contempt; "there is no general judicial discretion to excuse" civil contempt.  Id. at 726.

The contempt dispute has narrowed since it began.  Apprio originally sought to enforce both aspects of the Court's summary-judgment order recited above because Zaccari refused (1) to relinquish all copies of the CRR Software and (2) to assign his rights therein to Apprio.  See Contempt Mot. at 1.  Since that time, however, Zaccari claims he has complied with both aspects of the order, rendering the contempt motion moot.  See Mem. of P. & A. in Resp. to Contempt Mot. [ECF No. 82] ("Contempt Resp.") at 2.  On the first, Zaccari avers that he "relinquished all copies of the CRR Software and related documentation in [his] possession" and "permanently deleted, destroyed, or otherwise disposed of any remaining copies."  Aff. of Neil Zaccari [ECF

No. 82-1].  Apprio does not challenge the veracity of that aspect of Zaccari's affidavit and accordingly agrees that this portion of its contempt motion is moot.  See Reply Mem. Supp. Contempt Mot. [ECF No. 87] ("Contempt Reply") at 1.

But the dispute lives on with respect to the assignment.  Apprio does not contend that Zaccari has done nothing to comply with this portion of the Court's order.  It acknowledges that, in December 2024, Zaccari executed a document that "assigned" to Apprio "all right, title, and interest" in the CRR Software "that accrued to him during the period of" Zaccari's employment with Apprio.  See Confirmatory Assignment of Copyright [ECF No. 82-2] ("Zaccari Assignment").  The problem, according to Apprio, is that this purported assignment is not what the Court ordered him to sign.  Contempt Reply at 1–2.

Understanding why requires some context.  This whole dispute began in part when Apprio presented Zaccari with a confirmatory assignment and Zaccari refused to sign it.  See Apprio IV, 2022 WL 971001, at *13.  That assignment was straightforward: it explained that Zaccari created the CRR Software "within the scope of his employment" with Apprio, and that he therefore "assigns, transfers, sets over and delivers" to Apprio his "right, title, interest, throughout the world, in and to the copyrights" in the CRR Software.  See SUMF Ex. Q, Confirmatory Assignment of Copyright [ECF No. 59-19] ("Apprio Assignment").  And that assignment did not hedge: it would have had Zaccari "waive[] . . . any and all moral rights in the copyrights in the [CRR Software] which may have accrued" to him.  Id.

The assignment Zaccari has now signed (years later) is different.  It bears the same heading: "CONFIRMATORY ASSIGNMENT OF COPYRIGHT."  See Zaccari Assignment at 1.  And it does assign something to Apprio.  See id. at 2.  But it hedges in a number of ways, all evidently crafted with an eye toward (even more) litigation.  For one, Zaccari's assignment purports to assign

only the portion of the "right, title, and interest" in the CRR Software "that accrued to him during the period of [Zaccari's] employment" with Apprio, id. (emphasis added), whereas Apprio's assignment had no similar limitation.  And Zaccari's assignment also features "express[] . . . conditions": "that a later determination of contractual unconscionability in any court of competent jurisdiction would render this assignment void ab initio," and that the assignment "shall only be effective as to cases, controversies, litigations, etc." involving "similar admissions . . . made" by Zaccari or "similar facts . . . found" by the factfinder.  Id.

So the question for this contempt motion is whether, under the Court's order, Zaccari was free to craft such a squirrelly assignment or whether he was bound to sign Apprio's.

He was bound to sign Apprio's.  As the Court's summary-judgment opinion recited, the PIIA required Zaccari to "'execute, verify and deliver such documents and perform such other acts' that Apprio 'reasonably requests' Zaccari to perform in order to 'obtain[]' or 'perfect[]' the assignment of Proprietary Rights in Company Inventions." Apprio IV, 2022 WL 971001, at *12 (quoting PIIA ¶ 2.8).  And the Court concluded that Apprio's insistence on its confirmatory assignment was such a reasonable request:

> Apprio provided Zaccari with a confirmatory assignment of the CRR Software and the copyright in the CRR Software.  Zaccari refused to execute this confirmatory assignment.  Because the Court has already determined that the CRR Software is a Company Invention, Zaccari was required to execute this confirmatory assignment under Section 2.8, and his failure to do so is a breach of the PIIA.

Id. at *13 (citations omitted).  The Court's opinion, then, left little room for doubt: the PIIA obligated Zaccari to sign the confirmatory assignment Apprio provided.

To be sure, the Court's resulting order instructed Zaccari only to "execute an assignment to Apprio designating Apprio as owner" of the CRR Software.  See Order [ECF No. 64] at 1 (emphasis added).  But alongside the accompanying opinion, there is no way to read that order to

give Zaccari free rein over the contours of the assignment. <u>Cf.</u> <u>Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Artharee</u>, 48 F. Supp. 3d 25, 30 (D.D.C. 2014) (in civil contempt proceeding, reading order in view of accompanying memorandum opinion); <u>United States v. Young</u>, 107 F.3d 903, 907–08 (D.C. Cir. 1997) (in criminal contempt proceeding, explaining that "[w]hether an order is clear enough depends on the context in which it is issued and the audience to which it is addressed" (internal quotation marks omitted)). And Zaccari's behavior leaves no opportunity to consider whether minor deviations from Apprio's assignment, while leaving the material terms the same, would have been permissible. Zaccari's assignment is dramatically different from Apprio's—different in ways that attempt to undermine this Court's (and the D.C. Circuit's) rulings. <u>Compare</u> Zaccari Assignment at 2 (assigning to Apprio only the portion of the CRR Software "that accrued to him during" Zaccari's employment with Apprio), <u>with</u> <u>Apprio I</u>, 2021 WL 2209404, at *9 (holding that "Apprio has rights in all aspects of the CRR Software" regardless of when Zaccari developed different parts of it), <u>and</u> <u>Apprio V</u>, 104 F.4th at 909 (similar).

It is notable too that Zaccari continues to litigate related issues in other courts, and that the assignment he crafted attempts to preserve his ability to win those cases. <u>See</u> <u>Zaccari v. Discover Techs. LLC</u>, Civ. A. No. 3:18-453 (HEH) (E.D. Va.); <u>Zaccari v. United States</u>, Civ. A. No. 18-945 (EJD) (Fed. Cl.).[1] Those courts will handle those cases as they see fit. But if Zaccari prevails in them, it will not be because he escapes this case without fulfilling the obligations he owes Apprio. This Court and the D.C. Circuit have determined that the CRR Software belongs to

---

[1] Both matters were stayed pending the outcome of this litigation and resumed following the D.C. Circuit's judgment. <u>See</u> <u>Discover Techs.</u>, Civ. A. No. 3:18-453 (HEH), ECF Nos. 34, 62; <u>Zaccari</u>, Civ. A. No. 18-945 (EJD), ECF Nos. 24, 57. Zaccari's suit in the Court of Federal Claims was subsequently dismissed for failure to prosecute, <u>see</u> Civ. A. No. 18-945, ECF No. 66, while his suit in the Eastern District of Virginia has a pending motion to dismiss supported by the judgment in this case, <u>see</u> Civ. A. No. 3:18-453, ECF Nos. 63–64.

Apprio, full stop—not only to the extent its ownership accrued during Zaccari's employment, and not subject to "express[] . . . conditions."  <u>See</u> Zaccari Assignment at 2.

Accordingly, the Court finds that Zaccari has failed to comply with the clear and unambiguous order of March 31, 2022.  <u>See</u> Order [ECF No. 64].  And the only defense Zaccari raises—halfheartedly and in passing—does not apply.  Zaccari correctly notes that the D.C. Circuit has left open the question whether "substantial compliance" constitutes a defense to civil contempt.  <u>See</u> Contempt Resp. at 5 (citing <u>Potter</u>, 126 F.4th at 726).  But even if substantial compliance supplies a defense, Zaccari has not substantially complied: substantial compliance "requires the contemnor to show at least that it took all reasonable steps within its power to comply with the court's order."  <u>Potter</u>, 126 F.4th at 726–27 (internal quotation marks omitted).  Signing Apprio's assignment is plainly a reasonable step within Zaccari's power.

In this circumstance, the Court must issue "a conditional order finding the recalcitrant party in contempt and threatening to impose a specified penalty unless the recalcitrant party purges itself of contempt by complying with prescribed purgation conditions."  <u>In re Sealed Case</u>, 77 F.4th 815, 834 (D.C. Cir. 2023) (quoting <u>NLRB v. Blevins Popcorn Co.</u>, 659 F.2d 1173, 1184 (D.C. Cir. 1981)).  The Court will give Zaccari 21 days to purge his contempt by signing the confirmatory assignment provided by Apprio, <u>see</u> Apprio Assignment—something the Court is confident Zaccari will do promptly given Zaccari's assurances that, if the Court determines that he is in contempt, he "will comply with dispatch."  <u>See</u> Contempt Resp. at 5.  If Zaccari fails to purge his contempt within 21 days of this order, the Court will impose a fine of $250 per day of noncompliance—well below the $2,000 per day Apprio requests, <u>see</u> Mem. Supp. Contempt Mot. [ECF No. 74-1] at 4, but an amount the Court is confident will achieve compliance.  <u>See</u> <u>Int'l</u>

Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 829 (1994) ("per diem fine imposed for each day a contemnor fails to comply with an affirmative court order").

## II.    Attorney's Fees

For its trouble defending the 1560 matter and prosecuting the 2180 matter, Apprio seeks attorney's fees.  The default rule in American courts is that each party bears its own litigation costs. See Peter v. Nantkwest, Inc., 589 U.S. 23, 28 (2019).  That rule gives way, however, where "a statute or contract provides otherwise."  Id. (internal quotation marks omitted).

Apprio invokes both contract and statute.  As explained, the PIIA provides:

> In the event that any suit or action is instituted under or in relation to this Agreement, . . . the prevailing party in such dispute shall be entitled to recover from the losing party all reasonable fees, costs and expenses of enforcing any right of such prevailing party under or with respect to this Agreement, including without limitation, such reasonable fees and expenses of attorneys . . . , which shall include, without limitation, all fees, costs and expenses of appeals.

PIIA ¶ 11.7.  The Court has already concluded that Apprio prevailed in the 2180 matter, see Apprio IV, 2022 WL 971001, at *14, and Zaccari concedes that Apprio prevailed in the 1560 matter, see Mem. Opp'n Apprio's Mot. for Att'y Fees [ECF No. 88] ("Att'y Fees Opp'n") at 10.  So, under the PIIA, Apprio is entitled to reasonable attorney's fees it expended litigating both breach-of-contract claims—that is, the breach-of-contract portion of the 1560 matter and the entirety of the 2180 matter.

The 1560 matter, however, featured not only a breach-of-contract claim but also a copyright claim.  Whether Apprio is entitled to attorney's fees for defending successfully against that claim is a matter of statute, not contract.  It turns on the Copyright Act, which enables a court "in its discretion" to "award a reasonable attorney's fee to the prevailing party" in a copyright action.  17 U.S.C. § 505.  So the Court must first determine whether to exercise its discretion to

award Apprio the $43,631.25 (or some portion of that amount) it spent defeating the copyright claim. See Att'y Fees Mot. at 11; Hutchins Decl. ¶ 7.

    A.  The Court will not award fees under the Copyright Act.

Unlike under the PIIA—which mandates an award of reasonable attorney's fees to the prevailing party—in copyright actions, prevailing parties do not receive awarded attorney's fees "as a matter of course." Fogerty v. Fantasy, Inc., 510 U.S. 517, 533 (1994). Instead, the Court must exercise its discretion in determining whether to award attorney's fees, guided by such factors as "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Id. at 534 n.19 (internal quotation marks omitted); see also Spanski Enters., Inc. v. Telewizja Polska, S.A., No. 18-7050, 2018 WL 11413156, at *1 (D.C. Cir. Nov. 27, 2018) (per curiam). Of these, objective unreasonableness is a particularly "important factor," though it is "not the controlling one." Kirtsaeng v. John Wiley & Sons, Inc., 579 U.S. 197, 208 (2016).

The Court must take care not to "confuse[] the issue of liability with that of reasonableness," id.; an objectively unreasonable claim is not simply a failed one but one "clearly without merit or otherwise patently devoid of legal or factual basis," Prunty v. Vivendi, 195 F. Supp. 3d 107, 112 (D.D.C. 2016) (internal quotation marks omitted). It is true that the Court took a dim view of Zaccari's copyright claim and had little trouble dismissing it. But the claim did not lack a factual basis altogether: Zaccari had in fact registered a copyright in the CRR Software, and that software was in fact being used without his consent. Furthermore, the Court concluded only that Zaccari had to bring his action in the Court of Federal Claims, not that his action necessarily failed. See Zaccari, 390 F. Supp. 3d at 110–12. And, although that conclusion

should have been somewhat apparent from the outset, it didn't become entirely plain until <u>after</u> Zaccari initiated his action, when the United States filed a statement informing the Court that Apprio acted with the government's "authorization and consent" when it allegedly infringed Zaccari's copyright, as required for the jurisdictional defense to kick in.  See <u>id.</u> at 111 (citing 28 U.S.C. § 1498(b)); <u>cf.</u> <u>InvesSys, Inc. v. McGraw-Hill Cos.</u>, 369 F.3d 16, 21 (1st Cir. 2004) (awarding attorney's fees where the plaintiff "certainly knew at the outset" that his claim was doomed).

As for motivation, it is easy to question Zaccari's good faith in pursuing this (and related) litigation so relentlessly.  But the Court has no doubt that, at least when he launched this battle, Zaccari "genuinely thought" he had been wronged.  See <u>LZT/Filliung P'ship v. Cody/Braun & Assocs.</u>, 117 F. Supp. 2d 745, 753 (N.D. Ill. 2000).  The interest in deterrence, meanwhile, does weigh in favor of fees, especially given Zaccari's attempted manipulation of the confirmatory assignment to set up further litigation.  At the same time, however, Zaccari represents that he does "not inten[d] to file any further copyright litigation," <u>see</u> Letter from Neil Zaccari [ECF No. 88-1] at 2, and indeed he allowed his case in the Court of Federal Claims to be dismissed for failure to prosecute, <u>see</u> Civ. A. No. 18-945, ECF No. 66.  Finally, "considerations of compensation," <u>Fogerty</u>, 510 U.S. at 534 n.19, weigh strongly against an award of fees here, as Apprio will be amply compensated under the PIIA for enduring this saga and Zaccari is an individual of limited means, <u>see</u> Letter from Neil Zaccari at 2.

In other circumstances, the Court might well award attorney's fees.  But the Copyright Act prescribes a flexible inquiry with "wide latitude to award"—or not award—"attorney's fees based on the totality of circumstances in a case."  <u>Kirtsaeng</u>, 579 U.S. at 203.  For the above reasons—including because, as will become clear, Apprio will receive a staggering amount of attorney's

fees regardless—the Court will not award Apprio the $43,631.25 in attorney's fees it expended defending against Zaccari's copyright claim.

> B. <u>The Court will award "fees on fees" and appellate fees under the PIIA.</u>

Before turning to the fee award under the PIIA, the Court must assess two categories of fees whose inclusion Zaccari contests. First, he suggests (in passing and without argument) that the PIIA does not provide for "fees on fees"—that is, fees for the time spent litigating about fees. <u>See</u> Att'y Fees Opp'n at 12 (stating that fees on fees are "not supported by the [PIIA] or Copyright Act" but providing argument regarding only the Copyright Act). Not so. The PIIA grants to the prevailing party "all reasonable fees . . . of enforcing <u>any right</u> . . . with respect to this Agreement." PIIA ¶ 11.7 (emphasis added). Because the PIIA provides a right to attorney's fees, it also provides for recovery of the costs of enforcing that right. To be clear, though, the PIIA permits recovery of only the attorney's fees spent enforcing a right <u>under the PIIA</u>. Money spent seeking fees for litigating the copyright claim does not qualify.[2]

Second, Zaccari asks the Court not to award fees Apprio incurred fending off Zaccari's appeal. <u>See</u> Att'y Fees Opp'n at 11. He rightly does not contest that the PIIA entitles Apprio to reasonable attorney's fees including "all fees, costs and expenses of appeals." PIIA ¶ 11.7. Instead, he submits that "[t]he D.C. Circuit determines and decides appellate fees," and, having failed to seek them above, Apprio has forfeited its chance to recoup them. Att'y Fees Opp'n at 11. But none of the cases Zaccari cites supports this proposition, and in fact it is commonplace to seek appellate fees in the district court. <u>See, e.g.</u>, <u>Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.</u>, 675 F.2d 1319, 1333 (D.C. Cir. 1982); <u>Feld v. Fireman's Fund Ins. Co.</u>, Civ. A. No. 12-1789

---

[2] Apprio's records separate out the contract-related fees from the copyright-related fees spent in the 1560 matter, and these figures appear to include fees on fees. <u>See</u> Hutchins Decl. ¶ 7. So the Court need not distinguish fees-on-fees within the 1560 matter; it will award Apprio the full amount (less adjustments discussed below) sought for litigating the contract claim and none of the amount sought for litigating the copyright claim.

(JDB), 2020 WL 13610563, at *1 (D.D.C. May 15, 2020). So the Court will award attorney's fees spent on the appeal.

    C.  <u>Amount of Fees</u>

    Having determined that Apprio is entitled to the attorney's fees it expended on the breach-of-contract portion of the 1560 matter[3] and on the entirety of the 2180 matter,[4] the Court must determine the amount. Zaccari does not offer much help in this endeavor. He objects generally to Apprio's request, explaining that he is of limited means and that Apprio's request would "ruin him." Att'y Fees Opp'n at 14. But he offers no specific objections to Apprio's generally thorough documentation or allocation of time.

    The Court is sympathetic to Zaccari's circumstances. But the Court cannot simply neuter the contract to which he and Apprio agreed. The cases Zaccari cites to suggest the Court has such discretion all take the Copyright Act, not a contract, as the basis of their fee award. <u>See</u> <u>id.</u> at 13. The different contexts give the Court different measures of discretion. In the copyright context, the Court's job is to balance "the aims of the Copyright Act": "compensation and deterrence where appropriate, but not ruination." <u>Scott-Blanton v. Universal City Studios Prods.</u>, 593 F. Supp. 2d 171, 176 n.1 (D.D.C. 2009) (cleaned up). In the contract context, however, the Court's job is significantly less flexible: it may only enforce the parties' agreement.

    That agreement entitles Apprio to "all reasonable . . . fees and expenses of attorneys." PIIA ¶ 11.7. Accordingly, the Court's only job is to determine "a reasonable fee award . . . in light of the relevant circumstances." <u>Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.</u>, 129 F.3d 143, 150 (D.C. Cir. 1997). "[A] reasonable fee is computed by determining the so-called lodestar: a court first

---

[3] Apprio says this figure is $16,234.90. <u>See</u> Hutchins Decl. ¶ 7.

[4] Apprio says this figure is $981,763.49, consisting of $548,826.02 expended on the proceedings in this Court and $432,937.47 expended on appeal. <u>See</u> Hutchins Decl. ¶¶ 8–9.

determines the reasonable rate, then determines the reasonable hours worked, multiplies those two figures together, and makes adjustments as appropriate." Inova Health Care Servs. v. Omni Shoreham Corp., Civ. A. No. 20-784 (JDB), 2025 WL 1684132, at *3 (D.D.C. June 15, 2025) (cleaned up). The fee applicant bears the burden of demonstrating the reasonableness of both the hours and the rates. Eley v. District of Columbia, 793 F.3d 97, 100 (D.C. Cir. 2015). The Court's "essential goal" in this endeavor "is to do rough justice, not to achieve auditing perfection." Fox v. Vice, 563 U.S. 826, 838 (2011).

i.    Rates

Reasonable rates are those "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Covington v. District of Columbia, 57 F.3d 1101, 1108 (D.C. Cir. 1995) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)).

"[A]n attorney's usual billing rate is presumptively the reasonable rate," Baylor v. Mitchell Rubenstein & Assocs., P.C., 735 F. App'x 733, 735 (D.C. Cir. 2018), and that presumption holds true here. Apprio's attorneys are seasoned intellectual property lawyers with twenty-nine, twenty-five, twenty-seven, and thirty-four years of experience. See Hutchins Decl. ¶ 2. And their rates—which range from approximately $500 to $730 hourly, see id. ¶¶ 7–9—accord with prevailing rates for similar services. Apprio submits multiple surveys conducted by the American Intellectual Property Law Association showing that similarly experienced attorneys working on the same subject matter charge similar rates, see id. ¶ 4,[5] and further points out that the rates at issue here fall well below those outlined in the LSI Laffey Matrix, a commonly used guide to attorney rates

---

[5] See AIPLA, Rep. of the Economic Survey 2017 [ECF No. 73-6]; AIPLA, Rep. of the Economic Survey 2019 [ECF No. 73-7]; AIPLA, Rep. of the Economic Survey 2021 [ECF No. 73-8]; AIPLA, Rep. of the Economic Survey 2023 [ECF No. 73-9].

in complex federal litigation, see <u>DL v. District of Columbia</u>, 924 F.3d 585, 589 (D.C. Cir. 2019);

Laffey Matrix [ECF No. 73-5].  The rates are also in line with (and often below) the thriftier rates

reported in the Fitzpatrick Matrix—which is even more telling in light of the growing popularity

of the Fitzpatrick Matrix "as a more faithful barometer" of prevailing rates than the LSI Laffey

Matrix.  <u>Cabrera v. Mogoo, Inc.</u>, Civ. A. No. 22-1816 (TJK/MJS), 2025 WL 1341520, at *5

(D.D.C. May 8, 2025); <u>see</u> U.S. Att'y's Off. for the Dist. of Columbia, Civ. Div., The Fitzpatrick

Matrix, https://www.justice.gov/usao-dc/media/1395096/dl?inline (last visited July 9, 2025); <u>J.T.</u>

<u>v. District of Columbia</u>, 652 F. Supp. 3d 11, 26–27 (D.D.C. 2023) (discussing the origins of the

Fitzpatrick Matrix).

      ii.     Hours

     As with the rates, much of the onus of establishing the reasonableness of the hours lies with

Apprio.  "Attorneys who anticipate making a fee application must maintain contemporaneous,

complete and standardized time records which accurately reflect the work done by each attorney."

<u>Nat'l Ass'n of Concerned Veterans</u>, 675 F.2d at 1327.  These records "must be of sufficient detail

and probative value to enable the court to determine with a high degree of certainty that such hours

were actually and reasonably expended."  <u>Role Models Am., Inc. v. Brownlee</u>, 353 F.3d 962, 970

(D.C. Cir. 2004) (internal quotation marks omitted).

     Yet Zaccari also bears a burden: he must present "detailed and specific reasons why the

applicant's request should be reduced or denied."  <u>Beck v. Test Masters Educ. Serv., Inc.</u>, 73 F.

Supp. 3d 12, 17 (D.D.C. 2014).  Generally, a court will "consider objections to filed hours only

where it has been presented with a reasonable basis for believing the filing is excessive."  <u>Donnell</u>

<u>v. United States</u>, 682 F.2d 240, 250 (D.C. Cir. 1982).  Zaccari lodged no such objections, but the

Court has undertaken a thorough review of Apprio's hours nonetheless. After that review, it is convinced that a substantial but not dramatic reduction from Apprio's claimed hours is appropriate.

First, a reduction is warranted due to Apprio's practice of block billing. Lawyers engage in block billing when they "enter[] the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." Cobell v. Norton, 407 F. Supp. 2d 140, 159 (D.D.C. 2005). The resulting "lump[ed] together" time entries make it near "impossible to evaluate [each entry's] reasonableness." Role Models Am., 353 F.3d at 971. Apprio's lawyers are not the worst block-billing culprits this Court has seen, but they are culprits nonetheless. To take just one example of many, Mr. Roth consolidated the following six discrete tasks into one 7.5-hour entry:

> Preparation for and conference with Mr. Schroder re outstanding discovery issues; Completed review and revision to email search terms based on discovery conference; Conference with Mr. Dorfman re source code supplied by Zaccari and analysis of same; Completed correspondence to Mr. Britt and Mr. Izenberg re discovery conference; Completed draft of joint motion extending discovery dates; Finalized and served Apprio's objections and responses to Zaccari's third set of written discovery

Banner Witcoff Invoices [ECF No. 77] ("2180 Invoices") at 64. For the day's varied activities, Mr. Roth billed $4,200. Id. But the Court cannot discern whether that was a day well spent, because it does not know how much time Mr. Roth spent on any of the individual activities. And the Court doesn't mean to pick on Mr. Roth; the records are full of offending entries.[6] The block

---

[6] To get more of a flavor, consult, for instance, the 1560 Invoices [ECF No. 73-10] at 2 ("consider and research defenses; draft case notes; prepare for call with client; call with client"; $3,640 billed for 6.5 hours by Mr. Hutchins); the 2180 Invoices at 55 ("Completed draft correspondence to Mr. Izenberg on strategic options with respect to litigation; Completed correspondence to Mr. Britt and Mr. Izenberg re retention of potential experts and additional discovery obligations for the remainder of discovery time frame in scheduling order; Completed motion for extension of time for reply in support of motion for summary judgment; Completed factual investigation requested by Mr. Hutchins for use in reply in support of motion for summary judgment"; $3,159.03 billed for 6.2 hours by Mr. Roth); or the Banner Witcoff Invoices [ECF No. 77-1] ("Appeal Invoices") at 26 ("Review of Zaccari's corrected appeal brief to consider difference from original brief; multiple strategy communications regarding corrected brief; revising of outline of arguments in view of corrected brief"; $3,886 billed for 5.8 hours by Ms. Mitrius). See also, e.g., 1560 Invoices at 14; 2180 Invoices at 32, 33, 36, 42, 46, 55, 57, 62, 63, 64, 65, 90; 2180 Appeal Invoices at 25, 26, 34.

billing is pervasive enough that the Court will reduce the attorney's fee award by ten percent to account for it. See, e.g., Tridico v. District of Columbia, 235 F. Supp. 3d 100, 109 (D.D.C. 2017).

The block billing is especially concerning given a second problem: excessive amounts of time spent on certain tasks. For instance, Apprio's legal team spent approximately 77 hours on an 18-page reply brief. See 2180 Invoices at 54–57;[7] Reply Mem. Supp. Apprio's Mot. for Summ. J. on Contractual Assignment of Rights [ECF No. 39]; cf. Bode & Grenier, LLP v. Knight, 31 F. Supp. 3d 111, 123 (D.D.C. 2014) (finding 52 hours on reply brief unreasonable). And they spent 677.8 hours—$432,937.47—on the appeal. Hutchins Decl. ¶ 9. It is no doubt true that Zaccari's obstructive litigation tactics ran up his own bill, and the Court appreciates that the hours attributed to the appeal also include hours spent in mediation. See Banner Witcoff Invoices [ECF No. 77-1] ("Appeal Invoices") at 2–14. Furthermore, the Court does not wish to discourage "efforts . . . to produce the most polished brief possible, and to be meticulously prepared to respond to the Court's questions at oral argument." Role Models Am., 353 F.3d at 972. But "there is a point at which thorough and diligent litigation efforts become overkill," id., and a nearly half-million-dollar appeal in this case reflects overkill, not simply diligence. This is especially so if Zaccari's contentions were as frivolous as Apprio maintains. See Att'y Fees Mot. at 5 (noting that the D.C. Circuit "easily dispatched" with a number of Zaccari's arguments).

Although it is difficult to tell, it appears likely that a similar trend pervades Apprio's counsel's work across other tasks. And because Apprio does not justify such large figures, the Court will reduce its attorney's fee request by an additional thirty percent. See Role Models Am., 353 F.3d at 973–74 (noting the appropriateness of a fixed reduction in similar circumstances).

---

[7] The block billing prevents the Court from discerning precisely how much time was devoted to the reply brief, as certain blocks contain both reply-related and non-reply-related activities.

\*        \*        \*

Between the $16,234.90 spent on the breach-of-contract portion of the 1560 matter and the $981,763.49 spent on the 2180 matter, <u>see</u> Hutchins Decl. ¶¶ 7–9, Apprio's pre-adjustment entitlement is $997,998.39.  Cut by forty percent (ten for block billing and another thirty for excessive time), Apprio's total reasonable attorney's fee is $598,799.03.

### Conclusion

For the above reasons, the Court will order Zaccari to sign the confirmatory assignment Apprio provided him to sign.  <u>See</u> Apprio Assignment [ECF No. 59-19].  If he does not do so within 21 days—by not later than July 31, 2025, he will face daily fines of $250.  The Court will further order Zaccari to pay Apprio $598,799.03 in attorney's fees.  A separate order shall issue.

/s/
_____
JOHN D. BATES
United States District Judge

Dated:  <u>July 10, 2025</u>